No. 115,256

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In re the Marriage of:

JAMES LESLIE JOHNSTON,
*Appellant*,

and

PAMELA SUE JOHNSTON,
*Appellee*.

SYLLABUS BY THE COURT

1.

K.S.A. 2016 Supp. 60-260(b) allows a district court to provide relief from a final judgment for any of the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; or (6) any other reason that justifies relief.

2.

The first five grounds for relief under K.S.A. 2016 Supp. 60-260(b) are specific while the sixth is a general catch-all provision; each ground is mutually exclusive. Any party seeking relief from a judgment must file its motion within a reasonable time, and a motion based on any of the first three reasons (mistake, new evidence, or fraud) must be filed no more than 1 year after the judgment was entered. Moreover, the general catch-all provision of K.S.A. 2016 Supp. 60-260(b)(6) cannot be used to circumvent the 1-year limitations period provided in the first three specific grounds of the statute.

1

3.

As a general proposition, under K.S.A. 2016 Supp. 23-2712, a court has no authority to modify a separation agreement, other than any provisions in it relating to custody, parenting time, and child support, unless the parties themselves have agreed to such a modification. However, a divorce decree incorporating a court-approved separation agreement is a final judgment, and the prohibition against modifying a separation agreement does not apply when a party seeks relief under K.S.A. 2016 Supp. 60-260.

4.

The intent of the parties to a separation agreement governs that agreement, and the meaning of a contract should always be ascertained by a consideration of all pertinent provisions. A court determines that intent from the plain language of the agreement unless its terms are ambiguous. A contract is ambiguous when its language is susceptible to more than one reasonable interpretation. If a contract is ambiguous, a court can consider evidence other than the agreement itself.

5.

In the absence of unambiguous contract language, the taking of parole evidence is designed to allow the court to divine the intent of the parties beyond the words of the contract itself, not to alter the contract.

6.

It is well established that if parties to a contract subsequent to its execution have shown by their conduct that they have placed a common interpretation on the contract, this interpretation will be given great weight in determining the meaning of the contract.

7.

Parties to a divorce may enter into a separation agreement in order to settle all matters—including spousal maintenance—in lieu of litigating their divorce before the district court. If the district court finds the agreement to be valid, just, and equitable, the agreement is incorporated into the divorce decree. A court has no jurisdiction to modify spousal maintenance set by a valid separation agreement incorporated in the decree except as the agreement provides or by consent of the parties.

8.

Despite the restriction by K.S.A. 2016 Supp. 23-2904 on the court's ability to award maintenance beyond 121 months, K.S.A. 2016 Supp. 23-2712 still gives parties the authority to enter into separation agreements and to agree to a longer duration of spousal maintenance subject to the constraints of the agreement being valid, just, and equitable.

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Opinion filed August 18, 2017. Reversed and vacated.

*Joseph W. Booth*, of Lenexa, for appellant.

*Joseph A. DeWoskin*, of Kansas City, and *Larry V. Swall*, of Liberty, Missouri, for appellee.

Before LEBEN, P.J., POWELL and SCHROEDER, JJ.

POWELL, J.: This case demonstrates the dangers of filing a divorce without the assistance of competent legal counsel. James Leslie Johnston (Jim) and Pamela Sue Johnston divorced in May 2011. Despite having to contend with significant assets and debts, along with highly technical military pay, they pieced together a separation agreement on their own using a form journal entry and spread sheet. Jim and Pamela then appeared before a district judge asking that the agreement be approved. After a hearing,

3

the judge considered their agreement and signed off on it as valid, just, and equitable. However, Jim and Pamela really did not know or appreciate the differences (and similarities) between military retirement pay and spousal maintenance. This lack of awareness hit home when the district court, without any prodding from the parties, unilaterally altered their agreement 3 years later by making the spousal maintenance terminable at the end of 121 months. Pamela, realizing that the deal she thought she got—$1,000 for life unless she remarried—was upended, sought to undo or fix the agreement. This resulted in litigation before the district court and then a trip before us.

The district court's well-intentioned intervention complicated things as well. Its unilateral modification of the parties' agreement spawned this litigation in our view, and its remedy significantly altered the parties' agreement. Pamela, instead of receiving $1,000 a month for life in spousal maintenance, received half of Jim's military retirement pay, worth over $3,500 per month, *and* spousal maintenance of $1,000 per month. Because the law favors finality of judgments and leaving untouched separation agreements deemed valid, just, and equitable, we conclude the district court erred in reopening the property settlement agreement as Pamela brought her claim too late. We therefore reverse and vacate the district court's order modifying the agreement. Moreover, we take the unusual step of also reversing and vacating the district court's earlier unilateral order modifying the parties' spousal maintenance agreement and making it terminable after 121 months because the district court lacked the jurisdiction to do this and because the law does not prohibit Jim from agreeing to pay Pamela spousal maintenance for the rest of her life.

FACTUAL AND PROCEDURAL BACKGROUND

After 34 years of marriage, Jim and Pamela divorced in May 2011. During their marriage, Jim served 21 years in the military and then worked in the private sector; Pamela was primarily a stay-at-home mom. At the time of their divorce, Jim's yearly

4

salary was about $105,000, and Pamela's was about $37,000. In addition, Jim was also receiving a military retirement benefit of $3,546 a month. This number appears to be a post-tax estimate of what Jim received each month; tax documents produced in the district court show that the pre-tax amount was $3,756.

Neither Jim nor Pamela was represented by counsel during their divorce proceedings. Instead, they presented the court a pro se divorce decree, apparently using a form order prepared by the Kansas Judicial Council, and attached a spreadsheet showing how they planned to divide their property. This two-page separation agreement, which Jim prepared and both parties signed, listed the parties' debts and assets and assigned almost all of them to Jim, except that Jim was to move $100,000 from his 401(k) into a retirement account for Pamela. Jim also agreed to pay Pamela $1,000 per month in spousal maintenance unless she remarried. The form decree characterized the $100,000 transfer and the $1,000 monthly payments as "alimony" or spousal support. The agreement mentioned that Jim was receiving $3,546 a month in military retirement pay, and in two places it indicated that Jim's $1,000 spousal maintenance payments to Pamela would come out of those military retirement benefits. The form decree also indicated that except for personal property awarded to the other party, each party would be awarded all personal property in their possession.

In the divorce hearing, Jim testified briefly about the agreement and told the court that he was taking all of the parties "sizeable" debt and would move $100,000 from his 401(k) into a retirement account for Pamela. He also said he would pay Pamela $1,000 a month in spousal maintenance which was terminable only upon Pamela's remarriage. Pamela then testified that she agreed with Jim's statements and that she had had an opportunity to consult with a lawyer or accountant or other expert to make sure the agreement was fair. There was no specific discussion of the military retirement benefits. The district court approved the parties' separation agreement as "fair, just, reasonable, valid, and equitable," and it became part of the divorce decree.

After almost 3 years without any dispute and with Jim making the required monthly $1,000 spousal maintenance payments, in February 2014 Jim asked the court to terminate the maintenance payments to Pamela because she was living in a "marriage like relationship." After an evidentiary hearing, the district court denied Jim's motion because the parties' agreement stated that the maintenance payments would only end if Pamela got remarried, and Pamela wasn't remarried—she was just living with another man. However, the district court also discovered during this hearing that neither the decree nor the separation agreement had included an expiration date for the maintenance payments. Believing that Kansas law prohibits spousal maintenance for more than 121 months, see K.S.A. 2016 Supp. 23-2904, and without a request by either party to include an expiration date for the maintenance and over Pamela's objection, the district court unilaterally ordered that while Jim had to continue paying Pamela $1,000 a month, these maintenance payments would end after 121 months. Surprisingly, Pamela failed to appeal from this order.

Possibly prompted by the district court's unilateral order terminating maintenance payments after 121 months, on December 18, 2014, 9 months after the court had denied Jim's motion to terminate maintenance, Pamela, with the assistance of counsel, filed a motion asking the court (1) to find Jim in contempt for his failure to pay the required $1,000 maintenance payments—she alleged he had been recently only paying $640 per month leading to an arrearage of $720 as of the filing of the motion—and (2) to reopen the divorce case on the grounds that the parties' separation agreement had not divided Jim's military retirement benefits. At an initial evidentiary hearing, the district court denied Pamela's contempt motion but declared it would consider the military pension issue at a second hearing and urged Jim to obtain counsel. At the second evidentiary hearing, the district court determined that the property settlement agreement was ambiguous about the military retirement benefit because it conflated that significant asset with spousal maintenance payments. The district court heard testimony from Jim and Pamela about their agreement and from an expert witness about the present value of the

6

military retirement benefits—$696,413.55. The district court then said that it would not have approved the separation agreement if it had known the full value of the military retirement benefits because if those benefits were taken into account and awarded entirely to Jim, then the parties' agreement was not equitable. The district court then divided Jim's military retirement benefits equally between Jim and Pamela but did not alter the requirement that Jim continue making monthly $1,000 maintenance payments.

Jim timely appeals the district court's order.

### DID THE DISTRICT COURT HAVE THE AUTHORITY TO MODIFY THE PROPERTY SETTLEMENT AGREEMENT?

Jim alleges two main points of error on the part of the district court. First, he argues the district court lacked the authority to modify the separation agreement. Second, he argues the district court lacked the jurisdiction to reexamine the separation agreement because Pamela filed her motion too long after the divorce became final.

"A ruling on a motion for relief from judgment filed pursuant to K.S.A. 60-260(b) rests within the sound discretion of the [district] court. The [district] court's ruling will not be reversed in the absence of a showing of abuse of discretion." *In re Marriage of Leedy*, 279 Kan. 311, 314, 109 P.3d 1130 (2005). A district court abuses its discretion if the court's action is arbitrary, fanciful, or unreasonable or if the court's decision is based upon an error of law or an error of fact. *Garcia v. Ball*, 303 Kan. 560, 566, 363 P.3d 399 (2015).

A.      *The district court erred by modifying the separation agreement.*

K.S.A. 2016 Supp. 60-260(b) allows a district court to provide relief from a final judgment for any of the following reasons:

7

"(1) Mistake, inadvertence, surprise or excusable neglect;

"(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under subsection (b) of K.S.A. 60-259, and amendments thereto;

"(3) fraud, whether previously called intrinsic or extrinsic, misrepresentation or misconduct by an opposing party;

"(4) the judgment is void;

"(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

"(6) any other reason that justifies relief."

The first five grounds for relief are specific while the sixth is a general catch-all provision; each ground is mutually exclusive. *Leedy*, 279 Kan. 311, Syl. ¶ 4. Any party seeking relief from a judgment must file its motion "within a reasonable time," and a motion based on any of the first three reasons (mistake, new evidence, or fraud) must be filed no more than 1 year after the judgment was entered. K.S.A. 2016 Supp. 60-260(c); *In re Marriage of Boldridge*, 29 Kan. App. 2d 581, 582, 29 P.3d 454 ("[T]he finality of a divorce decree is favored by statute and by case law."), *rev. denied* 272 Kan. 1418 (2001); but see *In re Marriage of Sumpter*, No. 96,256, 2007 WL 656424, at *5 (Kan. App. 2007) (requirement that motion be filed within a reasonable time inapplicable to motions filed under K.S.A. 60-260[b][4] as being void). Moreover, the general catch-all provision of K.S.A. 2016 Supp. 60-260(b)(6) cannot be used to circumvent the 1-year limitations period provided in the first three specific grounds of the statute. *Garcia*, 303 Kan. at 567; *Leedy*, 279 Kan. 311, Syl. ¶ 4.

Here, the divorce decree was finalized on May 31, 2011. Pamela filed her motion seeking relief from the divorce decree and property settlement agreement on December 18, 2014, over 3 1/2 years after the final judgment, meaning she could not seek relief due to mistake, new evidence, or fraud. Instead, Pamela filed her motion under K.S.A. 2016

Supp. 60-260(b)(4), which does not contain the 1-year limitation, asserting the decree was void because the parties and the district court had failed to divide Jim's military retirement benefits. However, the district court granted relief to Pamela under K.S.A. 2016 Supp. 60-260(b)(6) instead. Jim attacks both grounds, asserting that neither is available to Pamela as mistake is the real reason for her seeking relief from the divorce decree.

At the outset, we note that Pamela does not cross-appeal the district court's implicit rejection of her voidness argument when it adopted the catch-all provision under K.S.A. 2016 Supp. 60-260(b)(6) as the basis for its ruling modifying the property settlement agreement. Given this, she has abandoned any assertion that she was entitled to relief under K.S.A. 2016 Supp. 60-260(b)(4). See *Lumry v. State*, 305 Kan. 545, Syl. ¶ 2, 385 P.3d 479 (2016). Instead, Pamela defends the district court's reliance on K.S.A. 2016 Supp. 60-260(b)(6), specifically arguing that the failure of the parties to divide a significant asset created a huge inequity that demanded relief. She also argues that ambiguity in the separation agreement as to whether Jim's military retirement benefit had been divided and how the $1,000 per month payment should be characterized—as military retirement pay or spousal maintenance—justified the district court's action.

As a general proposition, Jim is correct that a court has no authority to modify a separation agreement (other than any provisions in it relating to custody, parenting time, and child support) unless the parties themselves have agreed to such a modification. See K.S.A. 2016 Supp. 23-2712. However, a divorce decree incorporating a court-approved separation agreement is a final judgment, and the prohibition against modifying a separation agreement does not apply when a party seeks relief under 60-260. *State v. Hendricks*, 52 Kan. App. 2d 737, 740, 372 P.3d 437 (2016); see *Richardson v. Richardson*, 3 Kan. App. 2d 610, 612, 599 P.2d 320 ("A court is not deprived of its authority to grant relief from a final judgment under K.S.A. 60-260(b) merely because the judgment is a divorce decree incorporating a property settlement agreement."), *rev.*

*denied* 226 Kan. 792 (1979). Therefore, the district court had the authority to modify the separation agreement if relief was proper under K.S.A. 2016 Supp. 60-260(b)(6). The question is therefore whether the district court properly granted relief under this catch-all provision.

Jim argues, and we agree, that the catch-all provision cannot be invoked as a means of relief if the real basis for relief exists under one of the specific provisions of 60-260(b). See *Wilson v. Wilson*, 16 Kan. App. 2d 651, 657, 827 P.2d 788, *rev. denied* 250 Kan. 808 (1992). This rule is designed to prevent exactly what Pamela is attempting here—to bring a claim for relief under grounds which avoid the time limits of the statute. See *In re Marriage of Hunt*, 10 Kan. App. 2d 254, 260, 697 P.2d 80 (1985) (mutually exclusive provisions of K.S.A. 60-260[b] are "aimed at preventing parties from using the general catch-all provision . . . to escape the time limits").

Jim further argues that because Pamela's real basis for relief is a mistake found in K.S.A. 2016 Supp. 60-260(b)(1) and because Pamela only had 1 year after the divorce decree was finalized to seek modification of the decree under this ground, she is out of time. Pamela counters by arguing for an expansive application of the catch-all provision contained in K.S.A. 2016 Supp. 60-260(b)(6). For support, she relies on a number of federal court cases interpreting the analogous federal rule and an opinion issued by our court, *In re Marriage of Thomas*, 16 Kan. App. 2d 518, 825 P.2d 1163, *rev. denied* 250 Kan. 805 (1992).

In *Thomas*, the parties were divorced after a trial. However, 2 months later, the wife sought a new trial on the grounds that she was not aware of the existence of a second mortgage on the marital home which had been awarded to her in the divorce. She sought relief on the grounds of newly discovered evidence. The district court granted her relief under K.S.A. 60-260(b)(2), the specific provision dealing with newly discovered evidence, concluding that if it had known about the second mortgage, it would have ruled

differently in the divorce. Although the panel rejected the district court's rationale, concluding that relief was not available to the wife on the grounds of newly discovered evidence because with reasonable diligence the wife could have easily discovered the existence of the second mortgage and some evidence of a second mortgage was brought out at trial, it affirmed the district court's judgment modifying the divorce decree under K.S.A. 60-260(b)(6) because the district court was unaware of the second mortgage when it equitably divided the property. 16 Kan. App. 2d at 526. The panel stated: "A trial court has broad discretionary powers under K.S.A. 60-260(b)(6) to . . . modify its initial decree of divorce to remedy an inequitable division of property which was based on a misunderstanding of the true facts." 16 Kan. App. 2d 518, Syl. ¶ 3.

Pamela seizes on *Thomas* because that district court used the same rationale as the district court did here—that missing evidence, if known at the time, would have changed the court's decision. Undermining the district court's change of heart in our case is the fact that there was no missing evidence. The separation agreement listed the value of each and every asset and debt of the parties. Admittedly, the present monetary value of Jim's military pension was not listed as is typically required by K.S.A. 2016 Supp. 23-2801—Pamela's expert testified that the present value of Jim's military pension was $696,413.55—but the income it dispersed monthly to Jim was listed.

Our court dealt with a similar issue in the context of a retirement account in *In re Marriage of McCorkle*, No. 88,233, 2003 WL 22076477 (Kan. App. 2003) (unpublished opinion). There, the ex-wife filed a motion for relief from judgment asking the court to divide one of her ex-husband's retirement accounts. The ex-wife claimed that the separation agreement had not accounted for the present value of the retirement account, but the district court found that there was no reason to modify the agreement because she had known the monthly amount of the benefit at the time of the divorce. The panel affirmed, stating that "[k]nowing the present value of the plan would not have helped her

11

in deciding to agree that [husband] was to receive all of the Boeing retirement benefits." 2003 WL 22076477, at *3. The same is true here.

Military retirement pay is simply a stream of income to the retired service member which stops at the service member's death. In fact, according to our court, "[m]ilitary retirement pay has none of the qualities commonly attributable to marital assets such as cash surrender value, loan value, redemption value, lump sum value, or a value realizable after the death of the retiree." *Grant v. Grant*, 9 Kan. App. 2d 671, 676, 685 P.2d 327, *rev. denied* 236 Kan. 875 (1984). In the past, military retirement pay was not divisible. *McCarty v. McCarty*, 453 U.S. 210, 232, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981). It took an act of Congress and changes to the family law code to make military retirement pay divisible as a marital asset. See 10 U.S.C. § 1408(c)(1) (2012) (states given permission to treat disposable military retired pay as marital property after June 25, 1981); K.S.A. 2016 Supp. 23-2801 (divisible marital property includes "present value of any vested or unvested military retirement pay"). Moreover, military retirement pay, like spousal maintenance, is federally taxable and is included as gross income to the recipient—both the retiree and the retiree's former spouse. *Pfister v. C.I.R.*, 359 F.3d 352, 355 (4th Cir. 2004) (military retirement payments taxable to owner). Military retirement pay, although divisible as marital property, has all the hallmarks of taxable income instead of an asset, meaning the separation agreement which only listed the monthly income generated by Jim's military retirement pay was sufficient for the purposes of determining the equities of Jim and Pamela's agreement despite not listing a present value calculation. All this information was available to Pamela and the district court at the time of the divorce. Accordingly, we see no missing evidence and no miscarriage of justice.

Pamela also argues that because the district court found the property settlement agreement to be ambiguous as to whether the $1,000 monthly payments were to be treated as military retirement pay or spousal maintenance, the district court's modification was appropriate.

The interpretation of a separation agreement is a question of law that we review without any required deference to the district court's interpretation. *In re Estate of Einsel*, 304 Kan. 567, 579, 374 P.3d 612 (2016). The intent of the parties to a separation agreement governs that agreement, and "'"[t]he meaning of a contract should always be ascertained by a consideration of all pertinent provisions . . . ."'" [Citations omitted.]." 304 Kan. at 581; *In re Estate of McLeish*, 49 Kan. App. 2d 246, 255, 307 P.3d 221 (2013), *rev. denied* 299 Kan. 1269 (2014). We determine that intent from the plain language of the agreement, unless its terms are ambiguous. 49 Kan. App. 2d at 255. A contract is ambiguous when its language is susceptible to more than one reasonable interpretation. See 49 Kan. App. 2d at 255. If a contract is ambiguous, a court can consider evidence other than the agreement itself. See 49 Kan. App. 2d at 256.

Initially, we fail to see how declaring a provision of a separation agreement as ambiguous allows the district court to substantially alter the agreement. In the absence of unambiguous contract language, the taking of parole evidence is designed to allow the court to divine the intent of the parties beyond the words of the contract itself, not to alter the contract. See *Oliver v. Nugen*, 180 Kan. 823, 828, 308 P.2d 132 (1957) (parole evidence competent to clarify intent and purpose of contract, not for nullifying it). Here, the district court's declaration of ambiguity and its taking of parole evidence was used to justify its substantial modification of the agreement, not to ensure its enforcement.

Fundamentally, it is clear to us that the parties intended Pamela to receive $1,000 per month in payments from Jim, not for Pamela to receive half of Jim's military retirement pay and $1,000 in spousal maintenance; therefore, we question the district court's ambiguity finding. It is well established that "[i]f parties to a contract, subsequent to its execution, have shown by their conduct that they have placed a common interpretation on the contract, this interpretation will be given great weight in determining the meaning [of the contract]." *Heyen v. Hartnett*, 235 Kan. 117, 123, 679 P.2d 1152 (1984). Our view as to the meaning of the separation agreement is supported by the

13

parties' course of conduct. For 3 years the parties had no confusion about the fact that these $1,000 monthly payments were spousal maintenance payments. In fact, when Jim sought to terminate them on the grounds that Pamela was cohabitating with another man, Pamela never argued that the payments were her portion of Jim's military pay and therefore not terminable on the basis of remarriage or cohabitation. The district court also treated the payments as spousal maintenance both in how it treated Jim's motion and in its unilateral decision to stop them after 121 months. Additionally, according to the language in the divorce decree, it awarded to each party—except for personal property specifically awarded to the other party—all personal property in such person's possession. Given that Jim was the named owner of his military retirement pay, it was in his possession according to the terms of the decree. All of these facts taken together show no ambiguity as Jim was awarded sole ownership of his military retirement pay and Pamela was awarded $1,000 per month in spousal maintenance payments.

Finally, bolstering our finding that the district court had no basis to grant relief under K.S.A. 2016 Supp. 60-260(b)(6) is that Pamela's stated claim—that the parties failed to divide Jim's military retirement pay—is rooted in a mistake. See *McLeish*, 49 Kan. App. 2d at 254 (party who mistakenly approves divorce decree has right to seek relief under K.S.A. 60-260[b][1]); *In re Marriage of Cotter*, No. 104,466, 2011 WL 2535011, at *6 (Kan. App. 2011) (unpublished opinion) (party asserting that settlement agreement failed to properly include other needed provisions was one asserting mistake). If it is true that there was a mutual mistake by the parties in failing to include in the separation agreement a provision dividing a significant asset, Pamela needed to seek relief under K.S.A. 2016 Supp. 60-260(b)(1) and had to do so within a reasonable period of time but no longer than 1 year. Pamela did not, so she is out of time and her claim must fail. The district court erred when it granted relief, and we reverse and vacate its modification of the separation agreement.

14

B. *The district court's earlier unilateral order limiting spousal maintenance is void.*

We now turn to what we perceive as the true crux of this litigation—the district court's unusual action of unilaterally modifying the parties' separation agreement without the request of either party. Recall that 3 years after the divorce decree was entered, the district court denied Jim's motion to terminate spousal maintenance on the grounds that Pamela was living with another man. As part of its ruling, the court, *sua sponte* and over Pamela's objection, declared that the law prohibited spousal maintenance to be paid longer than 121 months and modified the parties' separation agreement by terminating Jim's spousal maintenance payments to Pamela after 121 months. For reasons unknown to us, Pamela never appealed from this unilateral order but pursued her present litigation strategy instead.

As we see it, it was this action that prompted Pamela's efforts to "fix" the agreement as the district court's unilateral order significantly altered the parties' separation agreement concerning spousal maintenance and undermined Pamela's understanding of it. For reasons we will explain, the district court had no jurisdiction to enter such a unilateral order, making it void. As it is our duty to question the court's jurisdiction, on our own if necessary, we reverse and vacate the district court's earlier unilateral modification of the separation agreement because the interests of justice and judicial economy require restoration of the status quo—*i.e.*, returning the parties to their original and unmodified agreement.

Parties to a divorce may enter into a separation agreement in order to settle all matters—including spousal maintenance—in lieu of litigating their divorce before the district court. K.S.A. 2016 Supp. 23-2712(a). If the district court finds the agreement to be valid, just, and equitable, as was done in this case, the agreement is incorporated into the divorce decree. K.S.A. 2016 Supp. 23-2712(a). As we have already discussed, once initially approved by the district court, a separation agreement may not be modified

15

without the agreement of the parties. K.S.A. 2016 Supp. 23-2712(b). "[A] court has no jurisdiction to modify alimony set by a valid separation agreement incorporated in the decree except as the agreement provides or by consent of the parties." *Bair v. Bair*, 242 Kan. 629, Syl. ¶ 3, 750 P.2d 994 (1988). Jim and Pamela's separation agreement included a provision that Jim pay Pamela $1,000 per month in spousal maintenance. The only limitation on this provision was that it was to terminate if Pamela remarried, and Pamela has never remarried.

However, K.S.A. 2016 Supp. 23-2904 states that "the court may not award maintenance for a period of time in excess of 121 months." Given the fact that the parties' separation agreement was incorporated into the divorce decree, which is a court order, the district court concluded that the original divorce decree was illegal in part because it authorized spousal maintenance beyond 121 months. Accordingly, the court unilaterally modified the separation agreement to limit spousal maintenance payments to 121 months. Unfortunately, the district court ignored the provisions of K.S.A. 2016 Supp. 23-2712(b) as well as the maxim that "'the paramount public policy is that freedom to contract is not to be interfered with lightly.'" *Idbeis v. Wichita Surgical Specialists, P.A.*, 279 Kan. 755, 770, 112 P.3d 81 (2005) (quoting *Weber v. Tillman*, 259 Kan. 457, 474, 913 P.2d 84 [1996]).

Our court has squarely addressed the question of whether parties may contract for spousal maintenance payments for a time period longer than 121 months. In *In re Marriage of Jones*, 22 Kan. App. 2d 753, 767, 921 P.2d 839, *rev. denied* 260 Kan. 993 (1996), our court held that despite the law's restriction on the court's ability to award maintenance beyond 121 months, "it still gave parties the authority to enter into separation agreements and agree to a longer duration of alimony subject to the constraints of the agreement being valid, just, and equitable." Accordingly, because the district court had already found the separation agreement to be valid, just, and equitable, the district

16

court was in error in its conclusion that the parties could not contract for maintenance beyond 121 months, and it was in error in modifying the parties' agreement.

But the district court was not just in error in modifying the separation agreement; it lacked the jurisdiction to do so. See *Bair*, 242 Kan. 629, Syl. ¶ 3. That makes the order void, and a "court must have subject matter jurisdiction as a prerequisite to entering a valid judgment." *In re Estate of Heiman*, 44 Kan. App. 2d 764, 766, 241 P.3d 161 (2010). "'A void judgment is a nullity and may be vacated at any time.'" *Board of Jefferson County Comm'rs v. Adcox*, 35 Kan. App. 2d 628, 636, 132 P.3d 1004 (2006) (quoting *State ex rel. Secretary of SRS v. Clubb*, 30 Kan. App. 2d 1, 3, 39 P.3d 80 [2001]). Even though Pamela has not specifically asked us for this relief, "a court is obligated to raise and address an apparent lack of subject matter jurisdiction even if the parties have not." *Heiman*, 44 Kan. App. 2d at 766. Because the district court lacked the subject matter jurisdiction to modify the separation agreement, its order from 2014 limiting spousal maintenance payments to 121 months is void. We reverse and vacate that order as well and return the separation agreement to its original and unmodified state.

C.      *Attorney fees are denied.*

Finally, we address Jim's demand for attorney fees under Supreme Court Rule 7.07 (2017 Kan. S. Ct. R. 50). Jim seeks attorney fees because he complains about Pamela's "irrational path of litigation" and argues she was unjustly enriched by the district court's modification of the separation agreement which awarded her both an equal division of his military retirement pay and $1,000 per month in spousal maintenance.

Under the rule, we may award attorney fees for services on appeal in a case where the district court had the authority to award attorney fees or in situations where we find an appeal has been taken frivolously or only for the purpose of harassment or delay. Rule

17

7.07(b)(1), (c) (2017 Kan. S. Ct. R. 50). In a family law case, the district court may award attorney fees to either party "as justice and equity require." K.S.A. 2016 Supp. 23-2715.

We are unsympathetic to Jim's request for two reasons. First, while we agree that Pamela took a torturous litigation path in her efforts for relief, she ultimately was not wrong that an inequity had been done to her. As we indicated, the district court's actions in unilaterally limiting spousal maintenance to 121 months spawned this litigation and upset the applecart. Second, Pamela would not have been unjustly enriched by the district court's latest order if we had upheld it. We can certainly understand the district court's buyer's remorse about approving Jim and Pamela's original agreement as Jim arguably benefitted more from the separation agreement than did Pamela. But the law does not require an equal division of property in a divorce, just an equitable one, see *In re Marriage of Brane*, 21 Kan. App. 2d 778, 783, 908 P.2d 625 (1995), and Pamela is bound by the agreements she makes, even bad ones. See *McLeish*, 49 Kan. App. 2d at 258; *Jones*, 22 Kan. App. 2d at 766. While hindsight is always 20-20, from our vantage point, Pamela's agreement—to allow Jim all of his retirement pay, despite the fact they were married during the entire time he was in the military and to instead receive roughly a third of the value of that pay in the form of spousal maintenance—surprises us and strikes us as unwise. But given that Jim assumed all the parties' debts and that the district court approved the separation agreement as valid, just, and equitable, we cannot say no reasonable person would have agreed to it.

The judgments of the district court are reversed and vacated, and Jim's request for attorney fees is denied.

* * *

LEBEN, J., dissenting: There are three key questions in this appeal. First, was the parties' separation agreement—which was approved in the court's judgment granting a

18

divorce—ambiguous about how Jim's military-retirement benefits were being divided? Second, if the agreement was ambiguous, does that give the district court the authority to modify it? Third, assuming the district court had that authority, did the district court abuse its discretion when it modified the divorce judgment by dividing Jim's military retirement benefits, the parties' most important asset? I agree with the district court that the agreement was ambiguous and that this gave the district court the authority to modify the parties' agreement. I also believe that the district court's decision to split the retirement benefits between the parties was a reasonable one. So I would affirm the district court and therefore dissent from the majority decision reversing its ruling.

I. *The Agreement Is Ambiguous.*

Let's start with the question of ambiguity in this agreement, which was drafted by Jim and Pamela, not by attorneys. Four judges have now reviewed the agreement. Two judges (the trial judge and I) find it ambiguous; two (the majority here) do not. This even split among four law-trained judges surely suggests ambiguity in this agreement drafted by two nonlawyer spouses.

It's possible, of course, that both the trial judge and I are wrong on this point. So let's look at why several of the provisions in the parties' agreement leave unanswered questions about how Jim's military-retirement benefits were handled.

When the Johnstons came to court on May 31, 2011, to get their divorce, their "separation agreement" consisted of only a two-page financial schedule. Prepared by Jim, the schedule showed debts, with monthly payment, balance, and who the debt would be assigned to. In some cases, there were explanatory notes, such as, in the case of a Phillips 66 credit card, "Pam can use until divorce is final. Cards to be given to Jim."

19

The schedule made a few references to Jim's military-retirement benefits. It was one of only four items listed under "ASSETS":

| | |
|---|---|
| Jim's 401K | $266,117 |
| Pam's 401K | $ 18,000 |
| House Est Profit | $ 36,554 |
| Jim's MC Retirement | $ 3,546 |

The "ASSETS" section then provided two subtotals: $284,116.63, which represented the total of the two 401(k) accounts, and $40,100, which was the sum of the numbers listed by estimated profit from the house and Jim's military-retirement benefits.

But the use of $3,546 for the value of the military-retirement benefit was wildly inaccurate. Jim was citing his monthly income (apparently after some deduction for $200—later documents in the court file show the benefit as $3,756 per month), not the present value of the account. An expert's report submitted later to the court said that the present value of the military-retirement benefit as of May 2011 was $696,414, by far the parties' most significant asset.

No other document had been given to the court to show the value of these retirement benefits. Jim had submitted a domestic-relations affidavit when he filed the divorce action in March, but the military-retirement benefit showed up only as "Other Income" in the monthly amount of $3,546.18; there was no reference by name to a military-retirement benefit, and Jim didn't list it in response to any of the questions that asked for a list of property owned and its present value. One of the questions had specifically asked for a listing of "[a]ll other personal property including retirement benefits," but Jim listed only the two 401(k) accounts.

There were only two other mentions of the military retirement benefits in the document submitted as the parties' settlement agreement. The first came after the list of assets and debts on the two-page schedule: The "Marine Corps retirement" is included in a list of "Additional settlement items." The listing for it said: "Marine Corps retirement[.] Jim pays alimony of $1,000. Stops upon remarriage[.]"

The military-retirement benefit also got mentioned in some footnotes at the end of the schedule, but like much of the document, clarity was not a hallmark.

Three explanatory items were listed at the end of the schedule, along with "NOTES" for each item. The items were:

| | |
|---|---|
| (1) NET (Assets – Debt) | $149,478 |
| (2) IRA Less Pam's 401K | $100,000 |
| (3) Monthly Alimony | $ 1,000 |

The item shown as "NET (Assets – Debt)" was derived by taking the sum of the two 401(k) accounts (rounded down to the nearest dollar, $284,116) and subtracting the listed debts ($134,638), which excluded mortgage, auto, and some of Pam's debts. The note for item (2) said: "NET (Assets – Debt) / 2 – Pam's 401K plus $23K in additional IRA money for Pam giving up all rights to the house." I am not sure how that explained the $100,000 IRA transfer to Pam; carrying out the listed math gets me to $79,739, not $100,000. Note (3) then provided a reference to the military-retirement benefit: "(Monthly MC Retirement) /2 – Pam's Car payment." Once again, though, some fuzzy math appears to have been in use.

Half of Jim's listed monthly military-retirement benefit of $3,546 would be $1,773. Subtracting Pam's car payment as shown on the exhibit, $360, would result in a $1,413 per month maintenance payment, not a $1,000 one. Presumably some adjustment

21

was made, but I can't explain it from what was provided to the court that day. It's not an adjustment for the tax consequences—maintenance is *deductible* to the payor (Jim) and *taxable* to the payee (Pam). See *Baker v. C.I.R.*, T.C. Memo. 2000-164 (U.S. Tax Ct. 2000). Had the parties wanted to make an adjustment for these tax consequences, you would have expected an adjustment in Pam's favor to reflect that she would be paying taxes on that income while Jim could deduct it. But whatever unexplained adjustment they made was in Jim's favor.

Those are all the references to the military-retirement benefits in the parties' settlement agreement, the two-page exhibit. When Jim and Pam arrived at court, the judge also gave them a fill-in-the-blank form for their divorce decree, which the parties apparently filled out themselves before the court asked questions of them. The form decree says that each party will have the property set aside to him or her "in the attached agreement." In the Johnstons' case, that was just the two-page schedule. No mention of the military-retirement benefits is made where the parties filled in the blanks on the form divorce decree.

So was the parties' settlement agreement ambiguous? A contract is ambiguous when there's more than one reasonable interpretation of its language. *In re Estate of McLeish*, 49 Kan. App. 2d 246, 255, 307 P.3d 221 (2013). And a divorce settlement agreement retains its contractual aspects even after it has been incorporated into a divorce decree. *In re Marriage of Hudson*, 39 Kan. App. 2d 417, 426, 182 P.3d 25 (2008). Here, Jim says he understood that he kept all of the military-retirement benefits while separately agreeing to pay Pam $1,000 per month in maintenance unless and until she remarried. Pam says she understood that she was getting half of the military-retirement benefits. She said he had been the one to pay their bills, "so it was easier for him to keep" paying her car payment and then "deduct [that payment] from his equation" showing what he owed her from the retirement benefit.

Could she have reasonably understood that they were splitting the military-retirement benefits between them? After my review of every mention of the military-retirement benefits, several factors lead me to believe she could have:

- The value of Jim's military-retirement benefit was neither listed (everyone knew that $3,546, the *monthly* payment, was not the *lifetime value* of it) nor included in the total "ASSETS" that the exhibit summed to $284,116 before subtracting debts to come up with a "NET" figure of $149,478. If the asset was simply being evenly divided, there would be no need to include a value on this form—and in fact, no remotely accurate value was stated. On the other hand, if it was being assigned solely to Jim, it would have been unusual and misleading not to provide any reasonable value estimate for the parties' most significant asset. That's especially so since the schedule also provided a figure called "NET (Assets – Debt)" that purported to show the parties' net worth. The figure shown as "NET" on the schedule, $149,478, was less than one-fourth of the then-present value of the military-retirement benefits standing alone.

- In the case of several other assets, there was a specific notation that one party made "no claim" to the asset. For example, for Pam's pay from her employment, the exhibit said, "Pam keeps. No claim by Jim on Pam's current or future pay." For Pam's 401(k) account, the exhibit said, "Pam keeps. No claim by Jim on Pam's 401K." *But there was no similar entry for Jim's military-retirement pay*. The agreement neither provided "Jim keeps his military-retirement benefits" nor said "No claim by Pam on Jim's military-retirement benefits."

- The court specifically noted during the divorce hearing that the parties would need an additional order (a qualified domestic-relations order, or QDRO) to transfer $100,000 of Jim's 401(k) account to Pam, as called for under their agreement. But the court did not ask any questions about assignment of the military-retirement benefits. Each party could reasonably infer that nothing further needed to be done—but each party had a different understanding about the effect of the parties'

23

agreement, something the court did nothing to investigate at the original divorce hearing.

- No notation in the schedule said anything like, "Jim's military-retirement benefits are assigned solely to him." In fact, there's no mention of it being assigned at all. Under "[a]dditional settlement items," there was the notation by "Marine Corps retirement" that "Jim pays alimony of $1000. Stops upon remarriage," but nothing was said assigning the underlying asset. Presumably the parties understood that for some period of time (unless or until Pam remarried), Jim would pay $1,000 of alimony, using his military-retirement benefits to do so, and that Jim would also make Pam's car payment. But the parties' agreement is silent about what happens if Pam remarries or after the car loan is repaid. By saying nothing about these key point and having no language specifically assigning the retirement benefits to Jim, the agreement is ambiguous.

II. *A District Court Has the Authority to Correct an Ambiguous Judgment under K.S.A. 2016 Supp. 60-260(b)(6).*

The district court granted Pam's motion under K.S.A. 2016 Supp. 60-260(b), which allows a district court to provide relief from a final judgment—by changing that judgment in some way—for any of several reasons set out in that statute. We review a district court's ruling on a motion under K.S.A. 2016 Supp. 60-260(b) only for abuse of discretion. *In re Marriage of Leedy*, 279 Kan. 311, 314, 109 P.3d 1130 (2005). A district court abuses its discretion if no reasonable person would agree with the ruling or the ruling is based on a legal or factual error. *In re Marriage of Larson*, 257 Kan. 456, 463-64, 894 P.2d 809 (1995); *Morton County Hospital v. Howell*, 51 Kan. App. 2d 1103, 1108-09, 361 P.3d 515 (2015), *rev. denied* 304 Kan. 1017 (2016).

Jim contends that Pam is arguing that the parties made a mistake when they failed to account for the present value of his military retirement. Jim tries to characterize the

24

problem as a mistake because "mistake" is one of the first bases for relief provided for in K.S.A. 2016 Supp. 60-260(b)—but a motion for relief based on mistake must be made within 1 year of the judgment. So Pam's motion, if based on mistake, was made too late to be considered.

Pam agrees with the district court that her motion was properly granted under the catch-all provision of subsection (b)(6), which allows the court to act when "any other reason justifies relief." By "any other reason," the statute means ones that aren't specifically listed elsewhere, like mistake. And a motion under subsection (b)(6) may be filed outside the 1-year time limit as long as the motion is filed "within a reasonable time." K.S.A. 2016 Supp. 60-260(c). Thus whether this is properly categorized as a mistake or as something else is critical.

We haven't faced this specific question before in Kansas, but New Jersey courts have concluded that an ambiguous judgment represents something fundamentally different from a mistake, so a party may obtain relief from judgment under the catch-all provision, subsection (b)(6). See *Linek v. Korbell*, 333 N.J. Super. 464, 473-74, 755 A.2d 1229 (App. Div. 2000); *Heim v. Wolpaw*, 271 N.J. Super. 538, 542, 638 A.2d 1373 (App. Div. 1994). Similarly, after finding a divorce judgment ambiguous, courts in North Dakota and Wisconsin allowed a trial court to modify the judgment. See *Neubauer v. Neubauer*, 524 N.W.2d 593, 596 (N.D. 1994); *In re Marriage of Washington v. Washington*, 234 Wis. 2d 689, 697-701, 611 N.W.2d 261 (2000).

When a judgment is ambiguous, there's not just some kind of mistake. An ambiguous judgment "has no meaning"—and therefore can't be enforced—until the ambiguity is resolved. *Heim*, 271 N.J. Super. at 542. Thus, "[r]esolving an ambiguity is a 'reason justifying relief' from the judgment other than correcting a mistake and is therefore cognizable" under the catch-all provision in the New Jersey statute comparable to subsection (b)(6). 271 N.J. Super. at 542. Under that analysis, in *Linek*, the court found

25

that relief from judgment was available when a trial judge created an ambiguity in the relative share each party would receive from a pension by failing to take into account future value fluctuations, which were relevant under New Jersey law. 333 N.J. Super. at 472-73.

The catch-all provision of K.S.A. 2016 Supp. 60-260(b)(6) applies when there is "something more" going on than can be captured within the reasons listed in the first five subsections. See 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil, Judgment § 2864 (3d ed. 2012); *Owens v. Mukendi*, 448 Mass. 66, 73, 858 N.E.2d 734 (2006). An ambiguous judgment constitutes that "something more."

Kansas caselaw is consistent with this conclusion. Our Supreme Court has emphasized that K.S.A. 2016 Supp. 60-260(b)(6) is to be liberally construed while preserving the balance between doing justice and bringing litigation to an end. *Garcia v. Ball*, 303 Kan. 560, 570, 363 P.3d 399 (2015). And in a case similar to the one now before us, *In re Marriage of Thomas*, 16 Kan. App. 2d 518, 825 P.3d 1163 (1992), our court approved a district court's grant of relief from a divorce judgment, recognizing that "[a] trial court has broad discretionary powers under K.S.A. 60-260(b) to . . . modify its initial decree of divorce to remedy an inequitable division of property which was based on a misunderstanding of the true facts." 16 Kan. App. 2d 518, Syl. ¶ 3.

In *Thomas*, a second mortgage against the house set aside to the wife was overlooked by the court—even though there had been some testimony about it. In granting the wife's motion for relief from judgment, the trial court said that it would not have required the wife to pay it had the court been aware of it. Our court concluded that the trial court "was confused or unaware of the existence and amount of the second mortgage." 16 Kan. App. 2d at 526. We affirmed modification of the divorce decree: "To hold otherwise would be to perpetuate the existence of an inequitable division of

property, which was based on a misunderstanding of the true facts." 16 Kan. App. 2d at 526.

Here too, the original divorce decree was based on a misunderstanding of the true facts. No one knew that Jim's military-retirement benefits were worth more than $600,000, and the court's judgment did not directly assign those benefits permanently to either party.

The majority opinion discounts *Thomas* and relies instead on an unpublished case from our court, *In re Marriage of McCorkle*, No. 88,233, 2003 WL 22076477 (Kan. App. 2003) (unpublished opinion). In *McCorkle*, as in our case, the wife did file a motion for relief from judgment asking that the court divide one of the husband's retirement accounts—and all the parties had known at the time of the divorce was the amount of the monthly benefit, not the present value of the future payments. But in *McCorkle* the wife explicitly agreed in the parties' settlement agreement that the retirement account be fully set over to husband and the court unambiguously did so in the initial divorce decree. The district court concluded that the wife had made a knowing choice—and that "[k]nowing the present value of the plan would not have helped her in deciding to agree that [husband] was to receive all of" that account. 2003 WL 22076477, at *3. We then affirmed the district court's denial of the motion for relief from judgment under an abuse-of-discretion standard. 2003 WL 22076477, at *3-4.

So *McCorkle* differs significantly from our case in that the wife agreed—and the court clearly ordered in the initial divorce decree—that the account at issue be permanently set aside to the husband. Our decision simply confirms that the trial court's judgment call denying a motion for relief from judgment was within its discretion—meaning that a reasonable person could agree with it. We did not consider—and did not decide—whether the trial court could have ruled in favor of the wife, as the district court in the Johnstons' case did. But in another unpublished case, *In re Marriage of Beal*, No.

27

96,342, 2007 WL 570309 (Kan. App. 2007) (unpublished opinion), we found no abuse of discretion in the trial court's *grant* of a motion for relief from a divorce judgment. There, as here, the district court said it would not have approved the parties' settlement agreement if it had understood the real facts. The trial judge in our case said it was his misunderstanding that led to the need for relief: "[I]t's my fault. Okay? I'll put it on me."

In addition to meeting the substantive requirement of subsection (b)(6), Pam also had to meet the procedural requirement of subsection (c), which required that she file her motion "within a reasonable time." See K.S.A. 2016 Supp. 60-260(c). The district court did not discuss this requirement in its ruling, but we must assume that it found that Pam had filed the motion within a reasonable time since the court granted the motion and Jim had challenged the motion's timeliness. Jim didn't ask for any further ruling on that issue from the district court, so on appeal we must presume that the district court made all the findings required to support its ruling. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012); *Morton County Hospital*, 51 Kan. App. 2d at 1109. We review a district court's ruling that a filing under K.S.A. 2016 Supp. 60-260 was within a reasonable time only for abuse of discretion. *Larson*, 257 Kan. at 463-64; *Morton County Hospital*, 51 Kan. App. 2d at 1108-09. A district court abuses its discretion if no reasonable person would agree with the ruling or the ruling is based on a legal or factual error. *Larson*, 257 Kan. at 463-64; *Morton County Hospital*, 51 Kan. App. 2d at 1108-09.

The question, then, is whether under the facts of this case Pam filed her motion within a reasonable time. Jim argues that she waited 42 months to file the motion, starting the clock at the time of the parties' divorce. But Pam initially believed that she had received a share of the military-retirement benefits, a belief she held onto until the court's March 2014 hearing (at which the court limited her maintenance payments to 121 months, even if she didn't remarry). Pam filed her motion about 9 months later. Given my conclusion that the agreement was ambiguous and that Pam reasonably believed she had

28

been given an interest in the military-retirement benefits, Pam had no reason to seek relief from the judgment until the May 2014 hearing had taken place. Thus, the specific question here is whether her motion filed 9 months later was filed within a reasonable time.

I find no abuse of discretion in the district court's implicit finding that the 9-month delay was reasonable. Jim has not shown any prejudice to him from this delay; he had the benefit of the ambiguous settlement agreement during that time. In *Leedy*, our Supreme Court noted that a party had not been prejudiced where the nonmoving party had the benefit of the overpayment. 279 Kan. at 324. And similar time periods have been upheld as reasonable in other cases. *E.g.*, *Morton County Hospital*, 51 Kan. App. 2d at 1110-11 (1-year delay).

I recognize that similar delays have also been found unreasonable on occasion. In *Larson*, for example, the district court found a 9-month delay unreasonable and our Supreme Court upheld that ruling. 257 Kan. at 466. But like our case, the appellate ruling in *Larson* was made under an abuse-of-discretion standard. The appellate ruling was merely that, on the facts of that case, a reasonable trial judge could have found the 9-month delay there unreasonable. That does not mean that the trial judge in our case, considering different facts, could not find the 9-month delay a reasonable one. I find no abuse of discretion in considering Pam's motion, which was filed within 9 months of Pam's awareness (through the district court's March 2014 order) that she hadn't explicitly been granted an interest in the military-retirement benefits.

In sum, a district court has substantive authority to grant relief from an ambiguous judgment, and Pam met the procedural requirement to file her motion within a reasonable time. The district court did not err here by concluding that it had authority under K.S.A. 2016 Supp. 60-260(b)(6) to grant relief from judgment.

III. *The District Court's Decision to Award Pam Half of the Military-Retirement Benefits Was Within the Discretion Given to the District Court.*

Having established that the district court had the authority to grant Pam relief from the judgment, she still must clear one more hurdle on appeal. A trial court's decision whether to grant relief from judgment is a discretionary call. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 937, 296 P.3d 1106 (2013); *Leedy*, 279 Kan. 311, Syl. ¶ 1; *In re Marriage of Thomas*, 16 Kan. App. 2d 518, Syl. ¶ 3. Unless its decision is based on a legal or factual error, that decision is reversible only if no reasonable person would agree with it. *Morton County Hospital*, 51 Kan. App. 2d at 1108-09.

The analysis leading to the conclusion that the trial court had the legal authority to grant relief eliminates the possibility of legal error. And Jim isn't arguing that the district court made some factual error. So the final question is simply whether a reasonable person could agree with the district court's decision to grant relief from judgment so that Jim's military-retirement benefits could be divided between the parties.

Those benefits were by far the parties' largest financial asset; their present value at the time of the divorce, $696,414, was more than four times larger than the amount ($149,478) listed on the parties' settlement agreement to represent their total net assets (assets minus debts).

In most cases with a lengthy marriage (here, 34 years) and an income disparity between husband and wife (usually, as here, favoring the husband), the husband pays maintenance for some period of time *and* the parties' assets are for the most part evenly divided. At the time of the Johnston's divorce, Jim's salary—beyond his military retirement—was about $105,000 and Pam's was about $37,000. Under Jim's interpretation of the divorce settlement agreement, the parties' largest asset would have

been set aside solely to him, his obligation to pay maintenance would have been less than half of the amount he received in retirement benefits each month, and even that limited maintenance obligation would have end upon either Jim's death or Pam's remarriage. Although Jim did take on a number of debts, the total nonmortgage debt was not close to the value of the retirement benefits. So Pam was receiving far less than half of the marital estate and a limited maintenance payment. The district court could reasonably conclude that equity would be better served by directly dividing Jim's military-retirement benefits between the parties.

I would affirm the district court's judgment.