(825 P.2d 1163)

No. 66,285

IN THE MATTER OF THE MARRIAGE OF BARBARA THOMAS,
*Appellee,* and ALONZO THOMAS, JR., *Appellant.*

Opinion filed February 14, 1992.

*Charles D. Kugler,* of Vasos, Kugler & Dickerson, of Kansas City, for the appellant.

*Gerald N. Jeserich,* of Boal & Jeserich, of Kansas City, for the appellee.

Before BRAZIL, P.J., REES and LEWIS, JJ.

LEWIS, J.: This is an appeal from the modification of a divorce decree pursuant to K.S.A. 60-260(b).

Appellant Alonzo Thomas, Jr., contends that the trial court erred in several respects in its modification of the divorce decree. After review, we affirm.

Alonzo and Barbara Thomas were married in 1949 and divorced in 1962. There were four children born to that marriage. After divorcing Barbara, Alonzo married Emily Gunn. It appears that Alonzo is still married to Emily.

When Alonzo and Barbara were divorced in 1962, Barbara was awarded custody of the four children of the parties and a house in Kansas City. Barbara was awarded the house subject to a mortgage, which she paid in full.

This action stems from events that took place in 1972. In that year, Alonzo moved back in with Barbara and the children and purchased a house on Isabel Street. The testimony indicates that Alonzo decided that the neighborhood Barbara and the children were living in was having a bad influence on the children. To remedy that problem, Alonzo purchased the Isabel house. He and Barbara set up housekeeping in the house on Isabel and lived together in that home until Barbara filed for divorce in 1989.

Barbara sued Alonzo for divorce on the theory that a common-law marriage existed between the parties. Barbara apparently was not aware of Alonzo's marriage to Emily. During the 1989 divorce hearing, Alonzo produced his marriage certificate, showing that he was still married to Emily. As a result, the trial court held that there could be no common-law marriage between Alonzo and Barbara.

Despite its conclusion that the parties were not married, the trial court divided the parties' assets between them. After a hearing on the matter, the trial court awarded the house on Isabel to Barbara, subject to all encumbrances. Alonzo was awarded the balance of the real estate owned by the parties.

At the time the decree was granted, Barbara maintains she did not know that the Isabel house was encumbered with a second mortgage in the amount of $37,000. Barbara insists that she first discovered the existence of the second mortgage when she went to the savings and loan to arrange her payments on what she believed to be a mortgage of $6,000.

Barbara filed a motion for a new trial two months after the original decree was entered. This motion was filed under K.S.A. 60-260(b) and alleged that Barbara was entitled to a new trial on the grounds of newly discovered evidence, fraud, misrepresentation, and/or misconduct of Alonzo. The trial court conducted a

hearing on the motion. Evidence was introduced showing that Barbara had signed the notes and mortgages of which she now contends she had no knowledge. Further, the record shows that Alonzo testified concerning the existence of the second mortgage at the 1989 hearing. Despite these facts, the trial court concluded that the existence of the second mortgage was newly discovered evidence and granted the motion for a new trial. At the new trial, evidence was introduced to show that Alonzo had taken out the second mortgage on the Isabel property to purchase and repair other properties, which he was awarded in the 1989 decree. The evidence also indicated that Barbara had owned a house at the time the parties resumed living together in 1972 and that this house had been sold and the proceeds used to purchase or repair other properties, which were awarded to Alonzo. The trial court concluded that, had it been aware of the second mortgage at the time of the 1989 trial, it would have ruled differently and, accordingly, modified the decree. The modified decree awarded Barbara the house on Isabel, subject only to the first mortgage against it. Alonzo was ordered to pay the $37,000 second mortgage against the property.

Alonzo appeals, raising two basic issues.

### DOES THE UNIFORM PARTNERSHIP ACT APPLY?

Alonzo first contends that, since he and Barbara were not married, the trial court had no authority to divide their assets as if it were dissolving a marriage. In fact, Alonzo argues that, under the circumstances shown, the court is bound in dividing the property to adhere to the principles of the Uniform Partnership Act K.S.A. 56-301, *et seq.* (UPA).

Alonzo's argument concerning the UPA is based on one sentence from the case of *Werner v. Werner,* 59 Kan. 399, 403, 53 Pac. 127 (1898), which is quoted with approval in *Eaton v. Johnston,* 235 Kan. 323, 328, 681 P.2d 606 (1984). That sentence states: " 'The court has the same power to make equitable division of the property so accumulated as it would have in case of the dissolution of a business partnership.' " 235 Kan. at 328. Based on this sentence, Alonzo argues that the division of property accumulated during a cohabitation, which does not amount to a marriage, is governed by the UPA. The UPA requires that part-

nership property, in this instance the Isabel house, must be applied first to the payment of partnership debt. Based on this analysis, Alonzo argues that the trial court should have ordered the Isabel house sold and the proceeds used to pay the indebtedness against the property which he argues was partnership debt. We disagree with Alonzo's argument.

Barbara contends that *Werner* and *Eaton* give a trial court broad equity power to divide property under the facts shown.

In determining whether the UPA applies, this court's standard of review is unlimited. It is well settled that, when the issue is one involving conclusions of law, this court has unlimited review. *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

We have carefully reviewed *Werner* and *Eaton* and conclude that those two cases do not support the theory advanced by Alonzo.

As far back as 1885, our Supreme Court, in considering the effect of a void marriage, stated:

"It is our opinion, however, that in all judicial separations of persons who have lived together as husband and wife, a fair and equitable division of their property should be had; and the court in making such division should inquire into the amount that each party originally owned, the amount each party received while they were living together, and the amount of their joint accumulations." *Fuller v. Fuller*, 33 Kan. 582, 586-87, 7 Pac. 241 (1885).

The *Werner* case, cited by Alonzo, was also a case involving a void marriage. In that case, the wife had another husband who was still living and whom she had not divorced. As a result, the trial court concluded that the marriage between Rosa and Emil Werner was void. Despite that conclusion, the court awarded Rosa a share of the property she and Emil had accumulated through their 22 years of cohabitation. Emil appealed.

On appeal, the Supreme Court held that the action was an equitable one and that the trial court had the authority to divide the property equitably. The court indicated that the testimony showed that the property the parties had at the time of the dissolution was largely the result of Rosa's labors. The fact that legal title was in Emil's name was of no consequence. The court

held that Rosa had a right to her share of the property which she helped Emil acquire. 59 Kan. at 402-03.

In *Eaton v. Johnston*, 9 Kan. App. 2d 63, 672 P.2d 10 (1983), *aff'd as modified* 235 Kan. 323, 681 P.2d 606 (1984), this court dealt with an unmarried couple. In that case, Johnston and Eaton were divorced, and, a short time later, resumed cohabitation. After two and one-half years, Eaton sought a division of the property the two had acquired during the period of cohabitation. This court held that the district court had the inherent power to make an equitable division of the property accumulated by the parties during the time they were living together. 9 Kan. App. 2d at 67.

The Supreme Court affirmed the decision of this court in *Eaton v. Johnston*, 235 Kan. 323, with one modification that is not pertinent to the present case. In Syl. ¶ 2 of the Supreme Court opinion, the court held:

"Where a common-law marriage is alleged but judicially held not to exist, the trial court, in the exercise of its inherent power to do equity, is authorized to make an equitable division of the property jointly accumulated by the parties or acquired by either with the intent that each should have an interest therein."

Neither decision relied on by the appellant implies that the property must be divided as if it were partnership property. The only authority for Alonzo's argument is the one sentence from the *Werner* decision, quoted earlier in this opinion. This sentence was repeated by the Supreme Court in *Eaton v. Johnston*.

We do not read the authorities cited by Alonzo as requiring a trial court to apply partnership principles when dividing property between two parties who have cohabited but who are not validly and legally married. These decisions refer to the inherent power of the trial court to do equity. The *Eaton* decision stands for the proposition that the trial court is authorized to make an equitable division of the property of the parties. It does not stand for the proposition that the trial court is required to apply partnership principles in dividing that property.

We hold in line with the *Eaton* decision that, under the facts shown, the trial court had the authority to make an equitable division of the property jointly accumulated by the parties or acquired by either with the intent that each should have an

interest therein. We find no merit whatsoever in Alonzo's argument that the trial court was bound by the UPA or was required to apply partnership principles in dividing the property. We further hold that the trial court's ultimate division of the property of the parties was equitable, and it is affirmed.

## APPLICATION OF K.S.A. 60-260(b)

Alonzo next argues that the trial court erred in granting Barbara's motion for a new trial on the grounds of newly discovered evidence. We agree with Alonzo's argument in this regard, but, as will become apparent, we hold that such error does not require us to reverse the modified decree.

Our review of the record reveals that the existence of the second mortgage can hardly be considered as newly discovered evidence. Barbara signed the note and mortgage in question and can hardly be heard to now proclaim ignorance of those documents or their contents. Further, the record shows that Alonzo testified on cross-examination about the existence of the second mortgage and the approximate amount of that mortgage. Indeed, the trial court found that Barbara's attorney found out about the existence of the second mortgage sometime during the cross-examination of Alonzo. The trial court went on to conclude that, despite her attorney's knowledge, Barbara was not aware of the existence of the second mortgage and apparently neither was the trial court. It is difficult to support the proposition that a party's attorney has knowledge of a fact without that knowledge being imputed to the party.

There is another reason why the motion should not have been granted on the basis of newly discovered evidence. K.S.A. 60-260(b)(2) provides that the trial court may relieve a party from a judgment or order for "newly discovered evidence *which by due diligence could not have been discovered in time to move for a new trial under K.S.A. 60-259(b)*." (Emphasis added.) The statute clearly requires that, in order to be newly discovered, the evidence must be such that it could not, by due diligence, have been discovered. The record in this case shows that the exercise of due diligence by Barbara or her attorney would have revealed the existence of the second mortgage. Barbara complains that Alonzo did not file a Rule 164 (1991 Kan. Ct. R. Annot. 126)

statement and did not voluntarily reveal the existence of the second mortgage. While that may be true, the evidence was as discoverable by Barbara after the decree was entered as it was before. If Barbara and her attorney had been exercising due diligence, they would have made inquiries or, at the very least, conducted a record search to discover what encumbrances the property located on Isabel Street was subject to. We cannot believe that due diligence was exercised when Barbara and her attorney failed to find out the existence of a second mortgage, which was readily ascertainable by reference to the public records of Wyandotte County. The existence of a second mortgage and its amount was also easily ascertainable by inquiry at the savings and loan in question. This evidence was discoverable by the exercise of the most elementary diligence and, under the provisions of the statute, a new trial cannot be justified on the grounds of newly discovered evidence.

Despite the trial court's error in the basis for granting relief, we are of the opinion that the relief is justified and should have been granted. K.S.A. 60-260(b)(6) provides that a trial court may relieve a party from a judgment or order for "any other reason justifying relief from the operation of the judgment." We believe relief could have appropriately been granted to Barbara under 60-260(b)(6), and we affirm the trial court on the basis that it was right for the wrong reason. In *Mid Kansas Fed'l Savings & Loan Ass'n v. Burke*, 233 Kan. 796, 666 P.2d 203 (1983), the Supreme Court upheld the trial court's granting of a new trial under K.S.A. 60-260(b) on a different ground from that of the trial court. In that case, the trial court and the Court of Appeals held that a new trial was proper under the element of excusable neglect. The Supreme Court affirmed the granting of a new trial, but held that surprise was the proper ground, not excusable neglect. The Supreme Court held that the trial court was right but for the wrong reason and affirmed the decision. 233 Kan. at 799-800.

In *In re Marriage of Hunt*, 10 Kan. App. 2d 254, 697 P.2d 80 (1985), this court held that, while the motion under K.S.A. 60-260(b) could arguably be sustained on the grounds of "mistake, inadvertence, surprise or excusable neglect," it could also be

upheld under K.S.A. 60-260(b)(6), in that the interests of justice justify a new trial. 10 Kan. App. 2d at 259.

We are convinced that the modified decision by the trial court is the correct decision and that the trial court had the authority to grant the relief under K.S.A. 60-260(b)(6).

"The broad language of K.S.A. 60-260(b)(6) authorizing relief for 'any reason justifying relief from the operation of the judgment' gives the courts ample power to vacate judgments whenever such action is appropriate to accomplish justice. This power is not provided in order to relieve a party from free, calculated and deliberate choices he has made. The party remains under a duty to take legal steps to protect his interests." *Neagle v. Brooks*, 203 Kan. 323, Syl. ¶ 5, 454 P.2d 544 (1969).

In *Wichita City Teachers Credit Union v. Rider*, 203 Kan. 552, 456 P.2d 42 (1969), the court stated:

"K.S.A. 60-260 introduced change in the law respecting the review and correction of judgments. The text of this statute was taken largely from the Federal Rules of [Civil] Procedure. (3 Barron and Holtzoff, Federal Practice and Procedure [Wright] § 1321 to 1332, incl.) The rule is broadly phrased and many of the itemized grounds for relief are overlapping. (*Laguna Royalty Company v. Marsh*, [C. A. 5th 1965], 350 F.2d 817, 823.) The rule is designed to permit the desirable legal objective that cases may be decided on their merits, and it must be given a liberal construction to prevent miscarriage of justice. (*Radack v. Norwegian America Line Agency, Inc.*, [C. A. 2d 1963], 318 F.2d 538, 542.) The recognition of the court's power to reexamine its ruling prior to docketing an appeal prejudices no one, and may facilitate the doing of equity which the rule contemplates. (*Sleek v. J. C. Penney Company*, [C. A. 3d 1961], 292 F.2d 256.)

. . . .

"Under the provisions of K.S.A. 60-260(c) and 60-260(b)(6) a trial court retains broad discretionary power to relieve a party from final judgment for any reason justifying relief from the operation of the judgment if such power is exercised prior to the time for docketing an appeal from the judgment in the supreme court." 203 Kan. at 555-56.

Our standard of review in concluding whether a trial court erred in granting relief under 60-260(b)(6) is abuse of discretion. *Chowning, Inc. v. Dupree*, 6 Kan. App. 2d 140, 143, 626 P.2d 1240 (1981).

In *In re Marriage of Hunt*, 10 Kan. App. 2d 254, Syl. ¶ 2, we said: "A motion for relief from judgment under K.S.A. 60-260(b) need not specify one particular ground for relief. It is sufficient if it demonstrates a right to relief under one or more grounds so long as it is timely filed." See *In re Petition of City*

*of Shawnee for Annexation of Land,* 236 Kan. 1, 687 P.2d 603 (1984). In essence, if the motion is filed within one year of the entry of judgment, the trial court may grant relief for any of the reasons set forth in the statute.

The record in the instant matter indicates that the trial court was confused or unaware of the existence and amount of the second mortgage at the original hearing. The trial court concluded that, had it been aware of the existence and amount of the second mortgage, it would not have required Barbara to pay that indebtedness. The trial court corrected this misunderstanding of the factual situation when it modified the decree. We hold that the trial court had the right to grant Barbara a new trial and modify its decree based on the authority granted in 60-260(b)(6). To hold otherwise would be to perpetuate the existence of an inequitable division of property, which was based on a misunderstanding of the true facts. The trial court has the power under K.S.A. 60-260(b)(6) to achieve justice and equity in this fashion and, in doing so, it did not abuse its discretion. The specification of the exact grounds for relief under a 60-260(b) motion is not required. The trial court had the authority to grant Barbara relief under any of the six subsections of 60-260(b). We hold that the trial court's decision was correct but for the wrong reason. Accordingly, we affirm the decision of the trial court.

Affirmed.