NOT DESIGNATED FOR PUBLICATION

No. 118,074

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NEW CENTURY BANK, f/k/a
NATIONAL FAMILY BANK OF MUNDEN, KS,
*Appellee*,

v.

CLIFFORD C. MCMILLAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Geary District Court; JACK L. BURR, judge. Opinion filed March 16, 2018.
Affirmed.

*Tai J. Vokins*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Lawrence, for
appellant.

*William J. Bahr*, of Arthur-Green, LLP, of Manhattan, for appellee.

Before MALONE, P.J., SCHROEDER, J., and BURGESS, S.J.

PER CURIAM: Clifford C. McMillan appeals the district court's decision to set
aside its order finding New Century Bank's, f/k/a National Family Bank of Munden,
Kansas (NCB), judgment was extinguished. The district court correctly applied K.S.A.
2017 Supp. 60-260(b)(6) and set aside the order after finding the special execution in
Dickinson County was sufficient to stop the Geary County judgment from being dormant
at the time McMillan filed his motion. We affirm.

1

This is the second of two appeals by McMillan involving separate actions—filed in two counties within the Eighth Judicial District—arising from the same judgment. McMillan's arguments implicitly seek to undermine a judicial decision in favor of NCB previously decided by a panel of this court. See *New Century Bank v. McMillan*, No. 117,355, 2017 WL 4847856 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* November 27, 2017. McMillan directly challenges the Geary County District Court's decision to reinstate a judgment it previously found was dormant and extinguished.

This particular appeal arises from a money judgment and order of foreclosure in Geary County after McMillan defaulted on a promissory note and mortgage. The Geary County District Court entered a judgment in favor of NCB's predecessor in June 2001. The judgment granted to the mortgagor was just under $49,000, together with interest, and further ordered the mortgage on two tracts of real estate in Geary County be foreclosed and sold. The sheriff's safe was confirmed by the court in February 2002. McMillan did not appeal.

*A Brief History of NCB's Collection Activities*

The sale of the Geary County properties did not satisfy NCB's judgment. Therefore, in October 2005, NCB issued a nonwage garnishment. In May 2006, NCB filed an application for a debtor's exam and served McMillan. NCB filed nonwage garnishments on May 23, 2006, and again on August 10, 2006.

*Collection Efforts in Dickinson County*

In October 2005, NCB registered its judgment against McMillan in Dickinson County District Court in order to perfect a judgment lien on real property McMillan

2

owned there. In September 2010, NCB requested an order of special execution from the Dickinson County District Court—based on the Geary County judgment—seeking to seize McMillan's Dickinson County property. The Dickinson County District Court issued the order of special execution. McMillan's real estate was executed upon by the local sheriff and sold at a public auction on October 18, 2010. The Dickinson County District Court confirmed the sheriff's sale on January 28, 2011. Again, McMillan did not appeal.

*McMillan's Efforts to Extinguish the Judgment*

In December 2015, McMillan filed a motion in Geary County District Court to release NCB's judgment, asserting it was dormant. McMillan asserted NCB's last collection effort was a garnishment issued in August 10, 2006, the court's docket reflected no other execution proceedings, and NCB had never filed a renewal affidavit with the Geary County District Court. McMillan failed to acknowledge or advise the Geary County District Court there had been an execution issued on the judgment filed in Dickinson County in 2010. McMillan argued the judgment had become dormant and was extinguished under K.S.A. 60-2403(a)(1) since at least August 10, 2013. The motion was served on the attorney who represented NCB in the original foreclosure proceeding in 2001. After NCB filed no response to the motion, the district court issued an order releasing the dormant judgment on February 2, 2016.

After receiving the order releasing the dormant judgment, McMillan returned to Dickinson County and filed a motion to set aside the order of special execution and the order confirming the sheriff's sale of his Dickinson County property. This motion was filed on June 6, 2016.

Almost nine months after the Geary County District Court ordered the judgment extinguished, NCB filed a motion to set aside the order and to revive the judgment. NCB

3

asserted K.S.A. 60-260(b)(6) applied because McMillan's motion to release the judgment failed to fully advise the court of NCB's prior collection activities, including the special execution issued in September 2010 by the Dickinson County District Court. NCB also emphasized McMillan was well aware of the Dickinson County proceedings and failed to disclose the same in his motion to release the judgment. NCB argued the Dickinson County execution was the latest attempt to collect on the judgment. Thus, under K.S.A. 60-2403(a), the earliest the judgment became dormant was in September 2, 2015, five years after the order of special execution. Moreover, under that statute, the judgment could not be extinguished before September 2017.

Based upon these facts, NCB asserted the order releasing the judgment was premature and unlawful. In addition, NCB asserted its motion to revive the judgment (included within its motion to set aside) should be granted because it was filed within two years of the judgment becoming dormant. See K.S.A. 60-2404. NCB asserted the balance of the judgment plus accrued interest was just over $40,000.

McMillan responded, challenging NCB's motion on several grounds. First, McMillan appeared to assert he had not misled the court because the last garnishment filed *in the Geary County District Court* was in 2006. He contended the Dickinson County writ of special execution was void under K.S.A. 60-2202, because the statute only permitted the court rendering the judgment (Geary County) to issue any order of execution. McMillan argued—as he did in case No. 117,355—that Dickinson County lacked jurisdiction to issue the execution writ and, therefore, its actions were void and would not toll the running of the dormancy statute. Finally, McMillan claimed NCB's K.S.A. 60-260(b)(6) motion was untimely because it was not filed in a reasonable time after the order releasing the judgment. McMillan emphasized NCB did not explain its delay in responding to his motion to extinguish and waived any challenge by sitting on its rights and remaining silent while his motion was pending.

4

NCB filed a reply and argued the Geary County District Court had no authority to determine whether the Dickinson County execution was void. It also asserted the validity of the Dickinson County order was irrelevant because the dormancy statute restarts after any *attempt* to execute on the judgment. NCB did not respond to McMillan's assertions NCB had failed to justify its failure to respond to his motion to extinguish or address its nine-month delay in filing its motion to set aside the order of extinguishment.

On June 2, 2017, the district court heard arguments on NCB's motion to set aside the extinguishment. After hearing both parties' arguments and noting the facts were undisputed, the district court found NCB took reasonable and sufficient steps in Dickinson County to indicate its intent to continue to collect on its judgment, and McMillan was aware of its action. The court found these actions were sufficient to restart the five-year period before the judgment would become dormant. Accordingly, the court set aside the order extinguishing the judgment and reinstated the judgment.

ANALYSIS

*Did NCB's special execution in Dickinson County toll the dormancy statute?*

On appeal, McMillan argues the district court abused its discretion in granting NCB's motion to reinstate and revive its judgment against him. McMillan raises two issues. First, he argues NCB's collection efforts in Dickinson County did not toll the dormancy statute, K.S.A. 2017 Supp. 60-2403. Second, he argues the district court erred in implicitly finding NCB's motion to set aside the order was filed within a reasonable time under K.S.A. 2017 Supp. 60-260(b)(6).

*The Relevant Statute and Standard of Review*

On February 2, 2016, pursuant to K.S.A. 60-2403, the district court ordered NCB's judgment against McMillan extinguished and released. The relevant portions of that statute state:

"[I]f a renewal affidavit is not filed or if execution, including any garnishment proceeding, support enforcement proceeding or proceeding in aid of execution, is not issued, *within five years from the date of the entry of any judgment in any court of record in this state*, . . . or within five years from the date of any order reviving the judgment or, if *five years have intervened between the date of the last . . . execution proceedings* undertaken on the judgment and the time of filing another renewal affidavit or undertaking execution proceedings on it, *the judgment, including court costs and fees therein shall become dormant*, and shall cease to operate as a lien on the real estate of the judgment debtor. When a judgment becomes and remains dormant for a period of two years, it shall be the duty of the judge to release the judgment of record when requested to do so." (Emphasis added.) K.S.A. 2017 Supp. 60-2403(a)(1).

McMillan contends NCB's judgment in Geary County became dormant on August 10, 2011, and was subject to release after August 10, 2013. Under McMillan's theory, NCB's last legitimate action relating to the judgment occurred on October 10, 2006, when NCB filed a nonwage garnishment. No action by NCB to collect the judgment was recorded in the district court's appearance record after the August 10, 2006 garnishment.

McMillan's calculations completely ignore the collections efforts in Dickinson County where the judgment was also filed and docketed as a judgment. First, McMillan contends the Dickinson County judgment was void for lack of subject matter jurisdiction and should be treated as a nullity with respect to the revivor statute. Second, McMillan asserts the improper execution in Dickinson County failed to meet the strict requirements

6

of the revivor statute and, as a result, did not toll the dormancy period of the Geary County judgment.

McMillan acknowledges NCB registered the judgment from Geary County in Dickinson County in October 2005. He also acknowledges NCB requested a special execution against his property in Dickinson County, that his real estate there was executed upon and sold by sheriff's sale, and the sheriff's sale was confirmed by the Dickinson County District Court. He now argues Dickinson County lacked subject matter jurisdiction to issue the writ of special execution and any action in Dickinson County was void. Thus, McMillan contends the special execution did not toll the Geary County judgment from going dormant pursuant to K.S.A. 2017 Supp. 60-2403(a)(1).

In claiming the Dickinson County actions were void, McMillan relies on the last sentence of K.S.A. 60-2202(a), which states: "Executions *shall be issued only* from the court in which the judgment is rendered." (Emphasis added.) McMillan's arguments are founded on the premise K.S.A. 60-2202(a) regulates a district court's *subject matter jurisdiction* to issue orders to execute writs to collect on judgments.

Questions relating to a court's subject matter jurisdiction are questions of law over which this court has unlimited review. *Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015). Subject matter jurisdiction may be raised at any time, whether for the first time on appeal or even on the appellate court's own motion. *Jahnke v. Blue Cross & Blue Shield of Kansas*, 51 Kan. App. 2d 678, 686, 353 P.3d 455 (2015). Moreover, the parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel. See *State v. Brown*, 299 Kan. 1021, 1030, 327 P.3d 1002 (2014). In the alternative, to the extent this issue rests on a question of statutory interpretation, again our standard of review is de novo. *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 293 Kan. 633, 640, 270 P.3d 1074 (2011).

7

*Was the Dickinson County execution void?*

Here, McMillan relies on *Duncan v. Investment Co.*, 102 Kan. 725, 172 P. 522 (1918), to support his claim K.S.A. 60-2202(a) creates a limit on a district court's subject matter jurisdiction. In that case, the Supreme Court held the court in Sheridan County lacked jurisdiction to issue an execution on the debtor's property in Sheridan County when the judgment was rendered in neighboring Decatur County. As a result, the court held the execution proceedings were void for want of jurisdiction. 102 Kan. at 726-27. *Duncan* has not been cited in any other Kansas case we can find. Since *Duncan* was decided, our district court system has been revamped and realigned.

The Kansas Supreme Court expressly rejected jurisdictional arguments in *Needham v. Young*, 205 Kan. 603, 470 P.2d 762 (1970). Needham obtained a judgment against the Youngs in Edwards County and, shortly thereafter, filed the judgment with the adjacent Hodgeman County District Court. The Hodgeman County District Court then issued an execution against the Youngs' real estate in Hodgeman County. The sheriff levied upon the property, and the real estate was sold at a sheriff's sale in Hodgeman County. The district court thereafter confirmed the sale and fixed an 18-month redemption period. After several attempts to set aside the sale, the Youngs filed a motion asserting the execution order issued by the Hodgeman County District Court violated K.S.A. 60-2202 which, like today, limited the authority to issue executions only to the court which rendered the judgment. The Hodgeman County District Court granted the motion to set aside, directed the clerk to refund monies paid by Needham for the purchase price, and ordered the Youngs to reimburse Needham for a mortgage payment he made while the case was pending. All parties appealed.

On appeal, the Supreme Court noted the order vacating the sheriff's sale was entered less than 14 months after the sale and within the redemption period set by the court. *Needham*, 205 Kan. at 605. Relying on K.S.A. 60-260(b)(6), the court reasoned the

8

Youngs' motion was filed within a reasonable time and was within the court's discretion. 205 Kan. at 606. Although it noted the Hodgeman County District Court violated the express terms of K.S.A. 60-2202 when it issued the execution, the Supreme Court made no mention of subject matter jurisdiction. Instead, the court found the violation of the procedural statutes constituted "any reason justifying relief" under K.S.A. 60-260(b)(6). Moreover, when rejecting the Youngs' cross-appeal relating to the repayment of Needham's interim mortgage payment, the Supreme Court specifically rejected the argument the proceedings "were null and void" because the district court "lacked jurisdiction." 205 Kan. at 607. The Supreme Court noted the claim was not raised below and by seeking to vacate the sheriff's sale, the Youngs had submitted to the court's jurisdiction. The *Needham* court instead focused on equity when considering the appropriate relief under the circumstances. 205 Kan. at 607-08.

The *Needham* court's rejection of the jurisdictional challenge implicitly differentiates a court exceeding its statutory authority from the concept of subject matter jurisdiction. The cavalier use of the term "jurisdiction" can cause confusion between subject matter jurisdiction and personal jurisdiction. Likewise, the misapplication of the term jurisdiction causes other problems as well.

"Another example, of particular pertinence here, arises out of the unfortunate penchant of judges and legislators to use the term 'jurisdiction' to describe the technically distinct notion of a *court's authority to issue a specific type of remedy* in a case in which the threshold requirements of subject matter and personal jurisdiction are not open to question. [Citations omitted.] *Steel Co.* [*v. Citizens for Better Environment*, 523 U.S. 83, 90, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998),] itself is emblematic. There, the Court rejected the view that the reference to 'jurisdiction' contained in 42 U.S.C. § 11046(c) implicated subject matter jurisdiction, concluding instead that it should be read 'as merely specifying the remedial powers of the court, viz., to enforce the violated requirement and to impose civil penalties.' [Citation omitted.]" *Prou v. United States*, 199 F.3d 37, 45-46 (1st Cir. 1999).

9

As the First Circuit Court of Appeals noted, once subject matter jurisdiction has properly attached, courts may exceed their authority or otherwise err, but such error does not cause subject matter jurisdiction to disappear. *Prou*, 199 F.3d at 45; see *United States v. Wey*, 895 F.2d 429, 431 (7th Cir. 1990) (courts may commit error and even violate the Constitution, but this does result in the loss of subject matter jurisdiction); *Szabo Food Service, Inc. v. Canteen Corp*., 823 F.2d 1073, 1077 (7th Cir. 1987) ("'Jurisdiction' is an all-purpose word denoting adjudicatory power. A court may have power to do some things but not others, and the use of 'lack of jurisdiction' to describe the things it may not do does not mean that the court is out of business."). Even the United States Supreme Court has recognized it has, at times, been "'less than meticulous'" when using the term jurisdiction in its decisions, and the imprecise use of the term has confused mandatory requirements of rules with subject matter jurisdiction. *Eberhart v. United States*, 546 U.S. 12, 17-18, 126 S. Ct. 403, 163 L. Ed. 2d 14 (2005).

The problems caused by the careless use of the term jurisdiction was recently recognized in *State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). In *Dunn*, the Supreme Court—rejecting a long line of caselaw—held the subject matter jurisdiction in criminal cases was conferred on the courts by the Kansas Constitution, not the pleadings filed with the court. 304 Kan. at 811. Although *Dunn* involved the criminal statutes defining crimes and proper charging documents, the Supreme Court recognized the unfortunate blending of the concept of "subject matter jurisdiction" with procedural mechanisms. As noted in *Dunn*, the Kansas Constitution vests "'judicial power of this state'" in the Supreme Court and such subordinate courts as may be provided by law. Kan. Const. art. 3, § 1. Likewise, K.S.A. 20-301 provides that each county shall have a district court which "'shall have general original jurisdiction' of all matters, 'both civil and criminal,' unless otherwise provided by law." *Dunn*, 304 Kan. at 789.

We cannot ignore the appeal to this court from the Dickinson County judgment declining to void the sheriff's sale. See *McMillan*, 2017 WL 4847856. In that case,

10

McMillan also argued the Dickinson County special execution and sheriff's sale were void for lack of subject matter jurisdiction. The panel found *Needham* established that the proper mechanism to set aside an execution was under K.S.A. 60-260(b)(6), not K.S.A. 60-260(b)(4) because the execution was not a void judgment. *McMillan*, 2017 WL 4847856, at *4. We, therefore, also find the execution was not a void judgment.

*Did the Dickinson County execution toll the dormancy time limit?*

NCB glosses over its failure to seek the writ of execution in Geary County rather than Dickinson County. First, NCB argues the dormancy statute requires only a renewal affidavit or an *attempt* to execute on the judgment, relying on language in *Casey v. Plake*, 45 Kan. App. 2d 99, 102, 244 P.3d 689 (2010). *Casey*, however, involved tolling of the dormancy statute during a stay preventing execution of the judgment, not what other actions are sufficient to restart the dormancy time period. The language in the *Casey* decision NCB relies on is, at best, dicta.

As before, NCB's arguments call for the interpretation of K.S.A. 2017 Supp. 60-2403(a). "Interpretation of a statute is a question of law over which appellate courts have unlimited review. The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. [Citations omitted.]" *State v. Morrison*, 302 Kan. 804, 813, 359 P.3d 60 (2015).

Kansas appellate courts have long recognized the procedure to revive a judgment under K.S.A. 60-2404 requires strict compliance. See *Associated Wholesale Grocers, Inc.* 293 Kan. at 646. "If a judgment becomes dormant it can only be revived within the time and in the manner prescribed by K.S.A. 60-2404. If, for whatever reason, this is not done, under K.S.A. 60-2403 the judgment is extinguished and its enforcement is barred." *Clark v. Glazer*, 4 Kan. App. 2d 658, Syl. ¶ 1, 609 P.2d 1177 (1982) (rejecting claim that equitable estoppel barred extinguishment of judgment).

11

To determine whether the Geary County judgment became dormant, we must apply K.S.A. 2017 Supp. 60-2403(a). It provides a judgment becomes dormant five years after the judgment was issued, five years after any order reviving the judgment is issued, or if five years have intervened since the last execution proceedings were undertaken. The ultimate question in this case is whether the execution of the Dickinson County writ, even if valid, qualifies as an execution proceeding under K.S.A. 2017 Supp. 60-2403(a) to toll the dormancy statute in both Geary and Dickinson County. The dormancy statute restarts anytime "an execution is undertaken." K.S.A. 2017 Supp. 60-2403(a)(1).

A conflict arises, however, because K.S.A. 60-2202(a), which creates judgment liens, states: "Executions *shall be issued only* from the court in which the judgment is *rendered.*" (Emphasis added.) As McMillan argues, NCB's judgment was rendered in Geary County. Since NCB did not request the Geary County District Court issue a garnishment order or writ of execution after 2006, there was no valid execution proceeding to preserve the Geary County judgment. There is some degree of logic to this argument. The Geary County District Court had the authority to issue a special writ of execution "directed to the appropriate officers of the counties where such executions and orders are to be levied," K.S.A. 2017 Supp. 60-2401(b), and the court could have issued an execution writ to the Dickinson County Sheriff. If the rendering court had the sole authority to issue writs of execution, the record of that court would always reflect the timing of the issuance of writs. Under these circumstances, the original judgment court could readily tell from its own records whether a judgment had become dormant and whether it had remained dormant for more than two years.

Concluding that only executions issued by the original court of judgment count for purposes of the dormancy statute, however, is undermined by several factors. First, under K.S.A. 60-2202(a), a creditor may filed an attested copy of the journal entry of judgment with the clerk of the court in any other county upon payment of a fee. Under these circumstances, the clerk in the registering court must "enter the judgment on the

12

appearance docket and index it *in the same manner as if rendered in the court in which the clerk serves.*" (Emphasis added.) K.S.A. 60-2202(a). This provision immediately precedes the sentence requiring executions only be issued from the court in which the judgment is rendered. This permits the statute to be reasonably interpreted that the rendering court includes all courts where the judgment is registered and indexed for purposes of issuing executions.

Secondly, the garnishment statutes, K.S.A. 60-719 et seq., contain no language limiting the issuance of garnishment orders to the original court of judgment. It appears that as long as the clerk has some judgment on record, even one registered from another county, it can issue a garnishment order. Thus, the lack of a limitation on the authority to limit garnishment orders undermines McMillan's claim that only the original judgment county can issue an order relating to collection activities on the unpaid judgment.

Finally, it seems appropriate to note the various statutes at issue in this case come from different articles of the Kansas Code of Civil Procedure. K.S.A. 60-2202(a), on which McMillan heavily relies, is within the judgment liens section of the Code. Garnishments are found in a separate attachment and garnishment section of the Code, K.S.A. 60-701 et seq. K.S.A. 60-2401 et seq. controls executions and orders of sale. K.S.A. 60-2401 et seq. also contains the dormancy and reviver provisions relating to judgments.

We find based upon reading all of the statutes together, when any garnishment order or writ of execution is issued by any court where the judgment has been properly registered qualifies as an appropriate action to keep the judgment alive and restarts the dormancy clock for another five years.

*No Abuse of Discretion to Set Aside the Judgment*

Next, we address McMillan's claim the district court erred in granting NCB's K.S.A. 60-260(b)(6) motion approximately seven months after the order was entered releasing the judgment. The record also reflects NCB failed to timely respond to McMillan's original motion to release the judgment.

The decision of a district court as to whether to set aside a judgment or ruling under K.S.A. 2017 Supp. 60-260(b)(6) rests in the sound discretion of the district court. Consequently, the decision will not be disturbed on appeal absent a showing of abuse of discretion. *Garcia v. Ball*, 303 Kan. 560, 565-66, 363 P.3d 399 (2015). An abuse of discretion occurs when the judge's decision is (1) arbitrary or unreasonable, (2) based upon an error of law, or (3) based on an error of fact. 303 Kan. at 566. The burden to prove the district court abused its discretion is on the party challenging the decision. *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 534, 216 P.3d 158 (2009).

Here, NCB filed its October 2016 motion to set aside the February 2016 order releasing the judgement relying solely on K.S.A. 2017 Supp. 60-260(b)(6), which states: "On motion and just terms, the court may relieve a party or its legal representative from a *final judgment, order, or proceeding* for the following reasons: . . . (6) *any other reason that justifies relief*." Any party seeking relief from a judgment must file its motion within a reasonable time, except that motions based on subsections (b)(1), (b)(2), or (b)(3) (mistake, new evidence, or fraud) must be filed no more than one year after the judgment was entered. K.S.A. 2017 Supp. 60-260(c)(1).

The Kansas Supreme Court recently reassessed the factors a district court should weigh when considering a motion under the catch-all sections of K.S.A. 60-260(b). The defendant in *Garcia* sought to set aside a default judgment entered against him under both K.S.A. 60-260(b)(1) (excusable neglect) and (b)(6) (any other reason justifying

14

relief). The court held the two provisions were not mutually exclusive if the (b)(6) provision was not being used to circumvent the one-year limitation applied to subsection (b)(1). 303 Kan. at 567-68. The court also limited prior caselaw requiring parties seeking to set aside a default judgment establish the default was not the result of inexcusable neglect or a willful act. 303 Kan. at 569; cf. *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 63, 523 P.2d 351 (1974) (addressing the setting aside of default judgments). Since relief under subsection (b)(1) was based upon excusable neglect, the *Garcia* court held that a party should not be obligated to establish excusable neglect to obtain relief under (b)(6) because such a requirement would render 60-260(b)(6) superfluous. 303 Kan. at 569. Thus, the *Montez* factors should not be "rigidly adhered to" when considering relief under subsection (b)(6). *Garcia*, 303 Kan. at 570.

In order to obtain relief under K.S.A. 60-260(b)(6), the *Garcia* court utilized the equity factors reflected in federal caselaw. 303 Kan. at 570; see, e.g., *Jennings v. Rivers*, 394 F.3d 850, 856-57 (10th Cir. 2005) (determining whether neglect is excusable under Fed. R. Civ. Proc. Rule 60[b] is an equitable one, taking into consideration, *inter alia*, prejudice to the party, reasons for the delay, and whether the movant has a meritorious defense). Finally, the court recognized K.S.A. 60-260(b)(6) was to be "'liberally construed "to preserve the delicate balance between the conflicting principles that litigation be brought to an end and that justice be done in light of all of the facts."' [Citations omitted.]" 303 Kan. at 570. The *Garcia* court concluded the defendant's claim of a meritorious defense as well as the disfavored status of default judgments was sufficient to warrant relief under K.S.A. 60-260(b)(6). 303 Kan. at 570-71.

Based upon the facts of this case, we cannot say Geary County District Court's decision to set aside the order extinguishing the judgment was an abuse of discretion. First, McMillan's attorney deliberately withheld information from the Geary County District Court by referencing only information in the Geary County District Court file. McMillan's attorney failed to mention that during the relevant dormancy period, NCB

15

had obtained a writ of special execution and successfully sold McMillan's real estate in Dickinson County where the judgment had been properly registered. One recognized ground for setting aside a ruling is when the order or judgment was "based on a misunderstanding of the true facts." *In re Marriage of Thomas*, 16 Kan. App. 2d 518, 526, 825 P.2d 1163 (1992). Moreover, based on our decision the execution was viable in Dickinson County, the Geary County judgment fails to meet the statutory requirements to justify a finding the judgment had been dormant for five years with no activity for two years after that. McMillan's counsel's silence about the Dickinson County proceeding certainly raises concerns as to whether the attorney skirted or crossed the line with respect to his obligations of candor toward the court. See Kansas Rule of Professional Conduct 3.3 (2018 Kan. S. Ct. Rule 344).

At oral argument, counsel for NCB acknowledged NCB was not going to challenge the dormancy order in Geary County until NCB realized the order was going to be used against it in Dickinson County in McMillan's attempt to set aside the execution and sheriff's sale there. Once McMillan's intentions became known, NCB timely filed the motion to set aside the default judgment. Although a strategic decision at first, it appears NCB misunderstood McMillan's strategy in dealing between the two counties.

Based upon the totality of the circumstances, NCB's ongoing efforts to collect on the judgment, its ability to establish ongoing efforts to collect on the judgment, and McMillan's apparently deliberate failure to advise the Geary County District Court of the Dickinson County special execution and sheriff's sale, we find NCB is entitled to relief from the order. Accordingly, the district court did not abuse its discretion in granting NCB's motion to set aside the February 2016 order finding the judgment against McMillan was dormant and extinguished in Geary County.

Affirmed.