NOT DESIGNATED FOR PUBLICATION

No. 118,445

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DONALD E. BUDD, JR.,
*Appellee*,

v.

LISA M. TANKING,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; R. WAYNE LAMPSON, judge. Opinion filed September 7, 2018. Affirmed.

*H. Reed Walker*, of Reed Walker, PA, of Overland Park, for appellant.

*R. Pete Smith*, of McDowell, Rice, Smith & Buchanan, P.C., of Kansas City, Missouri, for appellee.

Before MALONE, P.J., MCANANY and POWELL, JJ.

PER CURIAM: In this appeal, Lisa M. Tanking challenges the district court's determination that her relationship with Donald E. Budd, Jr. did not constitute a common-law marriage. She also challenges the district court's division of the home they occupied throughout their relationship.

On September 15, 2016, Tanking filed a petition for a divorce from Budd in Johnson County. She alleged that she was a resident of Wyandotte County and that she and Budd were in a common-law marriage. She requested that the marriage be terminated, that the property be divided equitably, and that she be provided maintenance.

1

Shortly thereafter, Tanking voluntarily dismissed this action without prejudice and that same day filed a second action for divorce in Johnson County, now claiming that she was a resident of Johnson County. She sought the same relief as before. The record does not disclose that there were any court proceedings in this action.

On October 3, 2016, Budd filed for a declaratory judgment in Wyandotte County, asking the court to find that he and Tanking were not in a common-law marriage. It is this action that went forward and resulted in the decision that is the subject of this appeal.

In the course of discovery in the Wyandotte County action, Budd requested that Tanking produce all documents in her possession or control relating to expenditures for the home they occupied, which went to the heart of the property division dispute. Tanking failed to produce any responsive documents.

At trial, the evidence focused on the nature of the relationship between the parties and their contributions to the home they occupied. With regard to the home, Budd testified that in June 1996 he purchased as a single person 50 acres of vacant land located in western Kansas City for $170,000. He began building a home on the property in 1997 and finished construction in August 1998. He introduced into evidence receipts showing that he paid for improvements on the land from 1996 through 2006 including a boat dock, building plans, building materials, labor, and landscaping materials. He also introduced receipts showing that he paid for the maintenance, utilities, taxes, and insurance on the property from 2010 through 2017. In total, the record shows that Budd spent $1,052,110.27 on the property.

On June 4, 2010, Budd conveyed the property to himself as a single person and to Tanking as a single person as joint tenants with right of survivorship. He claimed that he made the transfer upon the advice of counsel following the banking and economic crisis that began in 2008 in order to avoid possible adverse actions by creditors. Budd did not

2

deliver the deed or a copy of the deed to Tanking, and he testified that he did not intend to give her an interest in the property.

Tanking testified that she and Budd were dating in 1996 and that she helped Budd pick out the property where they built their home. She said that she helped Budd clear the land by cutting down trees, mowing the yard, and cleaning up the area to get the land ready for construction; that she helped by cleaning the site during construction; that she gave Budd money to pay the bills; that she paid to have the house painted, carpeted, and furnished; that she paid for landscaping, maintenance, the cleaning lady, and groceries; and that she kept the home in good condition. She testified that she worked the entire time she and Budd were together and gave her paycheck to Budd to contribute to their living expenses. She estimated that she spent about $500,000 on the property throughout the 20 years that Budd owned the property, but she failed to produce any receipts or other documentary evidence to confirm that such payments and contributions were made.

With regard to the common-law marriage issue, Tanking asserted that their common-law marriage began when she and Budd moved into the home together in April 1999. Tanking testified that shortly after they moved in together, Budd gave her a ring which she wore on her left hand as a wedding ring. She said she discussed marriage with Budd, "but we both decided that was not needed because we tried that once in life, him and I, and it failed." Before she and Budd moved in together, Tanking had her own home in Tonganoxie. She sold that home after she claimed her common-law marriage had begun, but without having Budd sign the deed.

During the duration of her relationship with Budd, Tanking consistently let it be known that she was single. She always filed her tax returns as a single person. She was covered by a government health insurance plan. On the insurance application she listed herself as a single person. Her passport was issued to her as a single person. According to Budd's brother, the family did not refer to Tanking as Lisa Budd. According to him,

3

everybody knew they would never get married. At a 20th anniversary party, the parties did not refer to themselves as being married for 20 years. The just referred to "20 years of turbulence, tolerance, laughter, and love."

Tanking never agreed to marry Budd. When asked if she claimed that she and Budd were married, Tanking responded, "I said we were in a committed relationship so, no, in your opinion, not married." Tanking stated, "Again, I never said I was married. We were in a committed lifetime relationship is what I thought." Tanking confirmed the accuracy of her deposition testimony in which she said, "'We weren't married. We were committed for life.'" When asked why she didn't tell people that she and Budd were married, Tanking responded,

> "I think it's quite evident you are right. We were not legally married, but I thought common-law marriage or, I mean, it's been around for hundreds of years.
> "I don't really know what the answer of that is but we—Don Budd and I always said we didn't need a piece of paper. We didn't need a ceremony, because we were committed, and that's what marriage was."

The district court found that the relationship of Tanking and Budd was not a common-law marriage because they never had an agreement to be married and never held themselves out to the community as being married.

The district court determined that it had the authority to divide the property on an equitable basis under *Eaton v. Johnston*, 235 Kan. 323, Syl. ¶ 2, 681 P.2d 606 (1984). The district court noted that the only real or personal property in question was the personal property located at the Wyandotte County residence and the residence itself. With respect to the personal property, the district court noted that the only personal property that Tanking could identify that she purchased was the grand piano. The piano was set aside to her.

4

With respect to the home, the court found that the joint tenancy deed was not dispositive. The court found that Budd's contribution to the acquisition, construction, and maintenance of the property was $1,052,110.27. Although Tanking had not substantiated her claimed contributions to the home, the court determined that she had a 20% interest in the home. The home was set aside to Budd, subject to Tanking's 20% interest. The dollar value of Tanking's interest was to be determined as follows: The property was to be appraised, and Budd's contribution of $1,052,110.27 was to be subtracted from the appraised value. Twenty percent of the net value of the home after deducting Budd's $1,052,110.27 investment was to be set aside to Tanking, to whom a lien was granted on the property as security.

Following the court's decree, the property was appraised and the appraisals revealed that the property was worth less than Budd's expenditures of $1,052,110.27 in the property. This yielded no residual value against which Tanking's 20% interest could attach. Thus, Tanking received nothing with respect to the home.

After the denial of Tanking's posttrial motion to amend, Tanking's appeal brings the matter to us. On appeal, Tanking claims the district court erred (1) in not finding a common-law marriage, (2) in its disposition of the home, and (3) in the manner in which her interest in the home was calculated.

*Common-Law Marriage*

Tanking contends the district court erred when it determined that the relationship of the parties did not constitute a common-law marriage. Whether a common-law marriage exists is a question of fact which we review for substantial competent evidence. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009). In doing so, we do not reweigh conflicting evidence, reevaluate the credibility of the witnesses, nor do we

redetermine questions of fact. *Wolf Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011).

> "To establish common-law marriage in Kansas, the plaintiff must prove (1) capacity to marry; (2) a present marriage agreement between the parties; and (3) a holding out to the public as husband and wife. [Citation omitted.] Each element must exist to establish a common-law marriage. [Citation omitted.] 'Although the marriage agreement need not be in any particular form, it is essential there be a present mutual consent to the marriage between the parties.' [Citation omitted.]" *Anguiano v. Larry's Electrical Contracting*, 44 Kan. App. 2d 811, 814, 241 P.3d 175 (2010).

There is ample evidence that the relationship of the parties did not constitute a common-law marriage. They did not hold themselves out to the public as husband and wife. Moreover, they did not have an agreement between themselves to be married. Tanking concedes that the parties agree that they were not married. She testified that she and Budd had discussed the possibility of marriage and decided against it. Tanking contends, however, that there was evidence before the district court that the two were in a committed relationship and that the public viewed them as married. A committed relationship is not an agreement to be married. Because the parties agreed that they were not married, the claim for common-law marriage must fail. The district court did not err in concluding that Budd and Tanking were not in a common-law marriage.

*The Disposition of the Home*

Tanking contends that the district court abused its discretion in awarding the home to Budd and granting her a lien against the property. She contends that the court should have recognized that she has a one-half interest in the home.

Tanking recognizes that when the court finds that no common-law marriage exists, the court still has the authority to equitably divide the property accumulated by the parties

6

during the time they lived together. But she contends the court's division was not equitable. She recognizes Budd's testimony about the relative contributions of the parties during the time they lived together, but she argues that "her more credible testimony was to the contrary." This argument is essentially a request that we reweigh the credibility of the witnesses. This, of course, we cannot do. *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 775, 69 P.3d 1087 (2003).

Finally Tanking contends that the court improperly penalized her for not keeping records of her financial contributions toward the building and maintenance of the home.

We review the district court's disposition of the home using the abuse of discretion standard of review to determine if the disposition was just and equitable.

"Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. [Citation omitted.]" *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

As stated in *Eaton v. Johnston*, 235 Kan. 323, Syl. ¶ 2, 681 P.2d 606 (1984):

"Where a common law marriage is alleged but judicially held not to exist, the trial court, in the exercise of its inherent power to do equity, is authorized to make an equitable division of the property jointly accumulated by the parties or acquired by either with the intent that each should have an interest therein."

See *Werner v. Werner*, 59 Kan. 399, 401, 53 P. 127 (1898); *In re Marriage of Thomas*, 16 Kan. App. 2d 518, 523, 825 P.2d 1163 (1992).

7

Here, the district court found more credible Budd's testimony and documentary evidence that he paid for nearly everything associated with the property. Budd presented receipts and a report from his accountant showing the money that was spent on the property. In total, the evidence showed that Budd spent $1,052,110.27 on the property.

Tanking testified that she spent money to help improve the home including money to paint, carpet, and furnish the home. She further testified that she put sweat equity into the home by maintaining the property. She estimated that her expenditures totaled approximately $500,000, but she failed to present any evidence to support this assertion. Though the court found Budd's testimony more credible than that of Tanking, the court nevertheless recognized that Tanking did make contributions to the home as evidenced by the fact that the court awarded her a 20% interest in the home after Budd's recoupment of his investment. We find no abuse of discretion in awarding Tanking 20% of the net value of the property. It cannot be said that no reasonable person would reach the district court's conclusion based on the evidence presented.

Finally, Tanking contends, without citing any authority, that providing itemized receipts in dividing property in a divorce action is seldom required, so she should not be penalized for failing to have receipts here. But the court did recognize that she made contributions to maintenance of the household and awarded her 20% of the net value of the home based on her contributions. She would have received nothing if the court required itemized receipts, because her testimony was the only evidence that she presented on this issue.

*The Calculation of Tanking's Interest in the Home*

Finally, Tanking contends, again without authority, that the district court abused its discretion when it allowed Budd to recoup his expenditures before dividing the net equity in the property. The district court's method of dividing interests in property is

8

commonly used and is consistent with *Denton v. Lazenby*, 255 Kan. 860, 862-63, 897 P.2d 607 (1994), in which the court determined in a partition action that a party could recover the cost of the improvements it made to the property.

Here, the court determined that Tanking was entitled to a 20% interest in the property even though she could not prove the amount she had actually contributed. Budd, on the other hand, had proven to the court's satisfaction that he had invested $1,052,110.27 in the property. The district court ordered the recoupment of this defined contribution to the property before the division of the balance of the value of the property to the parties on an 80/20 basis. Unfortunately, the amount that Budd invested exceeded the value of the home, leaving neither party with any net equity to divide. Each suffered a loss. There was no net equity to satisfy Tanking's 20% interest, and after 20 years of ownership, the home was worth less than the $1,052,110.27 Budd had invested in it.

Tanking argues that she should have received her 20% interest before Budd was credited with his investment. Tanking does not provide us with any authority condemning the method of division the district court used in this case. Besides, we have not been provided with the appraised value of the property. All we know is that the parties agree it was less than Budd's investment. Thus, we have no way of determining whether the loss of Tanking's 20% was more or less than the loss Budd suffered on his $1,052,110.27 investment in the property. Accordingly, Tanking has not shown that she was mistreated in the division of the property through the district court's abuse of its discretion.

Affirmed.